Arnold G. Fraiman, J.
The Attorney-General of the State of New York seeks an order under subdivision 12 of section 63 of the Executive Law, enjoining respondents from continuing certain alleged fraudulent and illegal business practices and directing restitution to the victims of such practices. Respondent Interstate Tractor Trailer Training, Inc. (“Interstate”) is a New York corporation which operates a private trade school at Vincentown, New Jersey. Since March 1, 1970 it has offered a course of instruction in the operation of heavy construction equipment. The course takes three weeks to complete if the student is in residence or, alternatively, eight weekends. Tuition, for which financing in part is arranged by the school, is $985. Respondent Gonedes is president and sole stockholder of Interstate and respondent Post is one of its salesmen.
By his petition, the Attorney-General charges that Interstate, in its advertisements and in statements by its salesmen, including respondent Post, repeatedly misrepresented that graduates of the course are able to obtain jobs immediately, in New York and elsewhere, as heavy equipment operators earning $6.60 an hour or more. The petition also charges that Interstate’s salesmen falsely promised or guaranteed prospective students that Interstate would obtain jobs for them upon graduation, and further misrepresented the number of machines on which they would be trained, and the size of their classes.
Samples of Interstate’s newspaper advertisements which appeared in the New York Daily News, and which are annexed to the petition, contain the following representations: ‘ ‘ Earn $300 per wk. & more with O/T “ Top pay jobs waiting! “ Earn up to $15,000 a year or more with overtime “ Operators needed for N. J., N. Y., Pa. areas and overseas “ Free placement upon graduation”; “ Companies hiring on Graduation Day”. A script for a television commercial which also was repeatedly shown on channels 5 and 9 and broadcast over radio station WJRZ contained the following exhortation: 6 6 Let Interstate train you to be a heavy equipment operator. Earn $6.60 an hour and more. ’ ’
Interstate concedes placing such advertisements and respondent Post, in his answer, admits telling prospective students that they could earn a minimum of $6 per hour. But respondents deny that graduates were guaranteed employment upon gradúa *680 tion, and deny misrepresenting the number of machines on which students would be trained, or the size of the classes.
With respect to the representations concerning prospective' earnings, petitioner claims that they are false in that ‘ ‘ few, if any ” New York graduates have obtained jobs paying as much as $6.60 an hour. In support of this contention the Attorney-General attaches the statements of 53 of the 179 students graduated from the school as of October 6,1970 (165 of whom are New York residents). Each student states that he was unable to obtain a job as a heavy equipment operator at the advertised salary, and most state that they have been unable to obtain jobs at all in this field. The Attorney-General also alleges, and it is not controverted, that the school’s employment records, subpoenaed by him, indicate that only 14 graduates were placed in jobs, and none at salaries approaching $6.60 per hour.
The only evidence submitted by respondents to controvert these allegations are bulletins of the United States Department of Labor predicting a growth in construction activities for 1970-71 and quoting union scale wages in New York for journeymen operators of bulldozer tractors, locomotive and road finishing machines at $6.55 an hour, as of July 1, 1969. Respondents also submit a letter from one contractor stating, without specifying salary, that he had hired five or six students and would be willing to interview others. A second letter by a potential employer, also submitted by respondents, indicates an interest in interviewing graduates of Interstate’s tractor-trailer driving course, another course which the school offered, and is irrelevant here.
The evidence submitted by respondents is insufficient to raise an issue of fact as to the falsity of Interstate’s advertisements and the representations of its salesmen insofar as they relate to potential earnings of graduates of the course.
However, respondents apparently rely not so much upon the truth of Interstate’s advertising, but upon the claim by respondent Gonedes that he obtained informal approval of each advertisement before it appeared, from an attorney employed by the Federal Trade Commission. They cite section 349 of the General Business Law which provides that compliance with Federal Trade Commission standards is a defense to an action brought by the Attorney-General under that section to enjoin deceptive business acts or practices. They argue that this defense is available in this proceeding, even though it is not brought under the General Business Law, but under the Executive Law, which makes no reference to Federal Trade Commission compliance as a defense.
*681 Respondents ’ contention is persuasive, particularly since at least some of the acts or practices which are sought to be enjoined here would appear to be of the same character as those subject to the provisions of the General Business Law. However, availability of such a defense to a proceeding brought under the Executive Law need not be determined, inasmuch as respondents’ claim of compliance with Federal Trade Commission regulations is not supported by the evidence. It is predicated solely upon the alleged informal sanction of its advertising by an attorney employed by the Federal Trade Commission. The attorney in question, while admitting that he gave 1 ‘ advice ’ ’ to respondent Gonedes concerning Interstate’s advertising, denies that he “ approved ” it. Resolution of this issue of fact is unnecessary, inasmuch as the evidence clearly demonstrates that he had no authority to approve prospective advertising on behalf of the Federal Trade Commission. Furthermore, the representations concerning job opportunities, as set forth in respondents’ advertisements, clearly do not comply with the Federal Trade Commission’s standards. The Federal Trade Commission proposed guidelines for Private Vocational and Home Study Schools,-Guide 6, states in part:
‘ ‘ MISREPRESENTATION OF FUTURE EMPLOYMENT OPPORTUNITIES.
“ (a) An industry member should not misrepresent directly or indirectly the opportunities for employment which will be available to students who successfully complete a course or courses. Illustratively, an industry member should not:
“ (1) Misrepresent the nature or extent of any demand for its graduates; or represent that a certain proportion or number of its graduates have obtained employment unless it has ascertained on the basis of reliable information that such is the fact.
“ (2) Falsely represent that its graduates will be placed in jobs in the geographical area of their choice.
“ (3) Misrepresent the amount of any starting or other salaries which its graduates may be likely to receive by virtue of completion of a course or courses.
“ (4) Represent that its graduates will be able to secure top positions in a particular field because of their completion of a particular course or courses when, in fact, such positions are available only to persons who have had additional training for or experience in such positions. Thus an industry member should not represent, for example, that ‘ * * * salaries up to $12,000 are available ’ when in fact the entry level salaries are much lower.” (See, also, Tractor Training Serv. v. Federal *682 Trade Comm., 227 F. 2d 420, cert. den. 350 U. S. 1005, rehearing den. 351 U. S. 934.)
Nor would respondents’ bona fide reliance upon the approval of Interstate’s advertisements by said attorney, even if that were established, be relevant here, in view of his lack of authority to provide such approval. Good faith or lack of fraudulent intent is not in issue. The definition of “ fraud ” as contained in subdivision 12 of section 63 of the Executive Law is equivalent to that contained in section 352 of the General Business Law (Memorandum of State Department of Law, 1965, McKinney’s Session Laws of New York, 2078) which has been construed to include acts which tend to deceive or mislead the public, whether or not they are the product of scienter or an intent to defraud. (People v. Federated Radio Corp., 244 N. Y. 33 ; Matter of State of New York v. Bevis Inds., 63 Misc 2d 1088.)
The representations made by respondents as to the earnings which could readily be obtained by graduates of Interstate’s heavy construction equipment course have no basis in fact and would clearly tend to deceive or mislead those persons seeking to better themselves in a new field of employment. This is so whether the reason such graduates are unable to obtain the promised jobs is inadequate training, a scarcity of such jobs due to economic distress, or, as respondents suggest, nepotism on the part of construction unions. Subdivision 12 of section 63 of the Executive Law merely requires that the misrepresentations be persistently made, and respondents ’ repeated advertisements and solicitation of students, based on representations of immediate job opportunities at $6 an hour or more, meet that test. There being no triable issues with respect to the allegation that respondents in advertisements and in statements to potential students misrepresented that graduates of Interstate’s school would be able to obtain jobs as heavy equipment operators at $6 or more an hour, a permanent injunction is granted against the continuance of such representations.
With respect to the charges that Interstate’s salesmen misrepresented that Interstate guaranteed job placement upon graduation, and also misrepresented the number of machines on which students would be trained, and the size of classes, triable issues of fact are raised. Not only have respondents submitted affidavits by three of Interstate’s salesmen denying that they guaranteed prospective students a job on completion of the course, but a number of graduates, who claim to have relied upon such promises, signed statements prior to graduation acknowledging that they understood that jobs were not guaranteed. Similar issues of fact and credibility exist as to the *683 alleged misrepresentations of the scope and manner of training, as well as questions of reliance and thy extent to which restitution is warranted. Accordingly, it is directed that trial be had at an early date to resolve all of these remaining issues. However, in view of the concession by respondent Gonedes that he had received complaints by students that salesmen had represented that Interstate would obtain jobs for them upon graduation, and the acknowledgment of an Interstate vice president that there had been “ misunderstandings ” in this respect, a preliminary injunction barring any further representations of this nature is granted. Since Interstate, at respondent Gonedes ’ instructions, has voluntarily taken steps to ensure that no such representations will be made in the future, such injunction will in no way prejudice respondents.