Sidney H. Asch, J.
This action has been instituted pursuant to section 349 of the General Business Law to enjoin, restrain and prohibit defendant from conferring or offering to confer upon any member of the public in the State of New York any academic or honorary degree; from directly or indirectly advertising, offering for sale or selling any academic or honorary degree to any member of the public in the State of New York; from representing itself as a “ college ” in any letter, advertisement, brochure, degree or other writing addressed to any member of the public in the State of New York; land from further engaging in deceptive acts and practices.
This legal intervention represents a laudable effort by the Attorney-General to protect the residents of this State. The uncontroverted facts are that the Colorado State Christian College (of the Church of The Inner Power, Inc.) has been busily engaged in offering for sale and selling Ph. D. degrees in sundry and sorted areas of specialization. Its recipients, including New Yorkers, were selected and recruited from such publications as “ Who’s Who of American Women.”
Speaking of colleges, President James A. Garfield once said, ‘ ‘ My ideal would be a log with a student at one end of it and Mark Hopkins on the other end.” The Colorado State Christian College does not quite qualify. It does operate out of a log cabin with address, P. 0. Drawer A. A., Evergreen, Colorado. But it does not qualify as a college or institution of higher learning. It has no formal entrance requirements except a contribution of $100 or more accompanying the application for the honorary degree (which is claimed to be tax deductible). It has no faculty members who are trained and competent to teach accredited and recognized academic courses, unless the activities described evidence an expertise in business administration. In the words of the immortal Bard of Avon, “ its books are babbling brooks, ’ ’ it supports no other library or educational facilities. It has no resident students, no curriculum accredited by any official or recognized agency.
In deciding whether or not the defendant has ‘ ‘ transacted business ” within the meaning of CPLB 302 (subd. [a], par. 1) and so as to satisfy the requirements of the United States Constitution, a court will consider the “ purposeful acts” of the defendant. The judicial application of the phrase ‘' transacts any business within the state ’ ’ under that provision has been explained by the court in Lumbermans Mut. Cas. Co. v. Borden *52 Co. (265 F. Supp. 99) and Northland Paper Co. v. Mohawk Tablet Co. (271 F. Supp. 763). As the court stated (p. 767) in the latter case, the “issue of jurisdiction should apparently be decided in terms of the totality of defendants’ ' purposeful activity ’ within the. state which is related to the transaction of business in question. ’ ’
Looking at the totality of defendant’s purposeful activities in New York, they include the following:
(a) defendant’s sales solicitation by mail (consisting of a letter, application form and a brochure) addressed to members of the New York public over a continuous period of at least five months.
(b) defendant’s shipment in the course and conduct of its business of at least one honorary doctorate degree to a purchaser in the State of New York who ordered such pursuant to the afore-stated sales solicitation.
From the foregoing it appears clear that defendant is transacting business in this State within the meaning of CPLB. 302. (Longines-Wittnauer Watch Co. v. Barnes & Reinecke and Singer v. Walker, 15 N Y 2d 443; see, also, cases cited in New York Court of Appeals decision Standard Wine & Liq. Co. v. Bombay Spirits Co. 20 N Y 2d 13, 16; see, also, Hanson v. Denckla, 357 U. S. 235, 253; Impex Metals Corp. v. Oremet Chem. Co., 333 F. Supp. 771: Matter of State of New York [Grossman], N. Y. L. J., June 6, 1968, p. 2, col. 3.)
This conclusion is rendered more compelling here in this proceeding by the State, as against a private citizen. In Matter of Le Belle Creole Int.. S.A. v. Attorney-General of State of N. Y. (10 N Y 2d 192, 197) Judge Fuld stated: “ What constitutes ‘ doing business ’ in order to render a foreign corporation amenable to process is not susceptible of exact delineation. Each case must be decided on its own facts having in mind the nature of the action or proceeding involved. To justify a civil suit against it and to satisfy due process requirements, the foreign corporation must process such ‘ minimum contacts ’ with the State the maintenance of the suit will not offend ‘ traditional notions of fair plav and substantial justice ’. (McGee v. International Life Ins. Co. 355 U. S. 220, 222; see, also, International Shoe Co. v. Washington, 326 U. S. 310, 314; Miller v. Surf Props., 4 N Y 2d 475, 480; Sterling Novelty Corp. v. Frank & Hirsch Distr. Co., 299 N. Y. 208, 210.) However, the right of a litigant to bring an action avainst a foreign corporation is not necessarily the measure of the State’s power to regulate it. ‘ What is necessary to * * * maintain a suit by a creditor ’, it has *53 been said, is not ‘ determinative when the state seeks to regulate solicitation within its borders ’. (Travelers Health Assn. v. Virginia, 339 U. S. 643, 653, per Douglas, J., concurring.) Where the purpose of the proceeding is to protect the citizens of the State from potentially dangerous consequences, less is required than might otherwise be the case. (See, e.g., Travelers Health Assn. v. Virginia, 339 U. S. 643, supra.)” (See, also, Matter of State of New York v. ITM, Inc., 52 Misc 2d 39, 61-62 [1966]; Margaret Weatherson, Inc. v. Forman, N. Y. L. J., April 16, 1973, p. 2, col. 1.)
The legislative purpose of section 349 of the General Business Law supports the position that the State is entitled to the relief which it now seeks. Passed in 1970, the entire statute was authored by the Antitrust Section of the New York State Bar Association. Accompanying this bill on the way through the Legislature, and on to the Governor, was the Report of the Committee on New York State Antitrust Law of the Antitrust Law Section of the New York State Bar Association (Dec. 31, 1967). This report purports to furnish a complete explanation of the purpose of each of the provisions of the bill.
It explains the purpose of section 349-d, which in pertinent substance provides that where the act or practice complained of by the Attorney-General is subject to and complies with the standards set by rules, regulations or statutes of the Federal Trade Commission, or the interpretation thereof by the commission or the Federal courts, the putative defendant is exonerated. In so explaining, the report at page 8 states: ‘‘ The Committee believes such a provision is necessary in order to protect businessmen from conflicting standards * * * and to make the federal law and its interpretation of deceptive acts and practices applicable to state enforcement. The words ‘ rules and regulations ’ áre intended to be broadly construed to cover all official policies of the Federal Trade Commission, including policy statements, advisory opinions and guides.”
Earlier on the same page, the report states “ Section 349-c * * * is drawn from Section 350-b of the General Business Law ”, which latter .also contains an exemption from prosecution for the false advertising outlawed by section 350 if the advertising complies with the rules and regulations of, and the statutes administered by the Federal Trade Commission.
Tn Metropolitan N. Y. Retail Merchants Assn. v. City of New York (60 Misc 2d 805, 807), the court said: “Section 350 of the General Business Law simply declares false .advertising to be unlawful. It appears that the State Legislature intended to *54 adopt requirements identical to those established by the Federal Trade Commission and to apply them to intrastate transactions in New York.”
Since section 349-d was ‘ ‘ drawn from ” section 350-b, the same conclusion applied to section 350-b by the court in the Metropolitan Retail Assn, case, should be applied to section 349-d.
It is thus clear that the legislative purpose in enacting section 349 of the General Business Law was to follow in the steps of the Federal Trade Commission with respect to the interpretation of deceptive acts and practices outlawed in section 5 of the Federal Trade Commission Act (U. S. Code, tit. 15, § 45) which reads in pertinent part (not too much different from the substantively equivalent subdivision (a) of section 349 of our General Business Law, quoted immediately infra): “ (a) (1) Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are declared unlawful.” Subdivision (a) of the New York statute says: “ Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.”
Commenting on the language in section 349 of the General Business Law the report of the Committee on New York State Antitrust Law at page 6 states: ‘ ‘ Section 349 of the proposed statute is the essence of the proposal of the Special Committee and is intended to be the substantive provision.” And: “ Its broad language provides public enforcement officials with the flexibility needed to protect both consumers and honest businessmen from the many varied forms of deception, present and future, whether committed intentionally or not.”
On page 4, the committee said (referring to Executive Law, § 63, subd. 12): “ The statutes based upon persistent fraud do not provide adequate consumer protection since they leave the public open to repeated fraud before the remedy, by its own terms, can be invoked. ”
In this connection, Governor Rockefeller in his message of approval (N. Y. Legis. Annual, 1970, pp. 472-473) said: “ These powers granted to the Attorney General under these bills will afford a practical means of halting consumer frauds at their incipiency without the necessity to wait for the development of persistent frauds, as required under existing, narrow statutes
Consequently, section 349 of the General Business Law deserves construction parallel to subdivision 12 of section 63 of the Executive Law.
*55 Section 349 of the General Business Law has been so lately enacted there is no reported case law interpreting its substantive provisions or its application. Nevertheless, guidelines there are aplenty in the interpretation and application of the Federal Trade Commission Act of 1915 (U. S. Code, tit. 15, § 45) quoted and discussed above, under which the Federal Trade Commission prosecutes cases of false labeling and false advertising.
In like circumstances, the Attorney-General said in his memorandum accompanying the bill which, in 1963, became section 350 et seq. of the General Business Law (the proscription against false advertising, referred to in the foregoing discussion and also containing the defense of compliance with Federal Trade Commission standards): 1 ‘ Moreover, by using language some of which has been in the United States Code since 1915 and all of which has been frequently construed in the Federal courts, existing case law will be available to guide the practicing lawyer and businessman. Thus the long period of uncertainty concerning interpretation of a new statute is avoided.” (N Y Legis. Annual, 1963, p. 106.)
The States of Arizona (Rev. Stat., § 4A-1521 et seq.), Connecticut (Conn. Stat., § 42-115d), Delaware (Code, tit. 6, § 2511 et seq.), Hawaii (Rev. Stat., ch. 480, § 408-2), Illinois (111. Stat., tit. 121%, § 262 et seq.), Iowa (Code, § 713.24) Maryland (Code, art. 83, § 19 et seq.), Massachusetts (Laws, ch. 93A, § 2), Missouri (Missouri Stat., § 407.010 et seq.), New Jersey (Stat. § 56:8-2), New Mexico (Stat., § 49-15-1 to 14), North Dakota (Century' Code § 51-15-01 et seq.), Texas (Texas Civ. Stat., tit. 79, § 5069-10.02), Vermont (Stat., tit. 9, § 2458 [a]) and Washington (Rev. Code, tit., § 19.86.020) at varying times since 1961, have all enacted statutes outlawing deceptive acts and practices, all modelled substantially upon the Federal Trade Commission Act of 1915, as is New York’s, and all containing the exemption of compliance with the standards and interpretations of the Federal Trade Commission.
This fact, in the light of the additional fact that deceptive acts and practices cross State lines, as in advertising, is strongly persuasive of both the intention to and, in the interests of avoiding Federal-State conflict of standards, the necessity for applications and interpretations of the statutes by the States, including New York, parallel with those under the Federal Trade Commission Act.
Thus, not only is the legislative purpose of applying Federal Trade Commission standards to the enforcement of section 349 et seq. of the General Business Law in this State clear, but it is *56 also strongly supported in many other States; and this is an important circumstance to be borne in mind.
The Federal courts have consistently held that proof of intention to deceive is not requisite to a finding of violation of the Federal Trade Commission Act since the purpose of the statute is not to punish the wrongdoer but to protect the public (Gimbel Bros. v. Federal Trade Comm. 116 F. 2d 578; Federal Trade Comm. v. Sterling Drug, 317 F. 2d 669, 674). The good or bad faith of the advertiser is legally irrelevant in determining if an advertisement is false. (Koch v. Federal Trade Comm., 206 F. 2d 311; Dorothy, Clifford, Steers, Shenfield, Inc. v. Federal Trade Comm., 392 F. 2d 921.)
In Montgomery Ward & Co. v. Federal Trade Comm. (379 F. 2d 666, 670) the court specifically ruled: “ The charge was deceptive advertising, and whatever Wards’ intentions were in the advertising, they are not controlling in the determination of its deceptiveness. Actual deception, proved by deceived consumers is not necessary; the likelihood of deception or the capacity to deceive is the criterion by which the advertising is judged. Feil v. F.T.C., 9 Cir., 285 F. 2d 879, 896 (1960); Parker Pen Co. v. Federal Trade Commission, 7 Cir., 159 F. 2d 509 (1946); Charles of the Ritz Dist. Corp. v. F.T.C., 2 Cir. 143 F. 2d 676 (1944). ”
It thus becomes apparent that to accomplish the purposes of the sponsors of section 349 of the General Business Law “ to make federal law and its interpretation of deceptive acts and practices applicable to state enforcement ’ ’, the test of false advertising must be the “ capacity to deceive ” and no specific injuries need be established.
The “ capacity to deceive ” test has been consistently applied by the courts of our own State to ‘ ‘ fraud ’ ’ under the Martin Act and under subdivision 12 of section 63 of the Executive Law.
In People v. Federated Radio Corp. (244 N. Y. 33, 38-39), the Court of Appeals stated: “ In a broad sense the term [fraud] includes all deceitful practices contrary to the plain rules of common honesty * * * The words ‘ fraud ’ or ‘ fraudulent practice ’ in this connection should, therefore, be given a wide meaning so as to include all acts, although not originating in any .actual evil design or contrivance to perpetuate fraud or injury upon others, which do by their tendency to deceive or mislead the purchasing public come within the purpose: of the law.” (See, also, Grenthal v. American Guar. & Liab. Ins. Co., 5 Misc 2d 994; Matter of State of New York v. Interstate Tractor *57 Trailer Training, 66 Misc 2d 678; Matter of State of New York v. Bevis Ind., 63 Misc 2d 1088.)
Most recently, in Matter of Lefkotvitz v. E. F. G. Baby Prods. (40 A D 2d 364, 367) the court said in this regard: “Respondent’s defense that it acted in good faith, even if believable, is irrelevant as to the question of the illegality of the act and to the question of further violations ’ ’.
The Federal courts have uniformly sustained orders of the Federal Trade Commission prohibiting the use of trade name designations which have a tendency to create an erroneous impression as to the nature of the business. (See Goodman v. Federal Trade Comm., 244 F. 2d 584; Federal Trade Comm. v. Civil Serv. Training Bur., 79 F. 2d 113; Macher v. Federal Trade Comm., 126 F. 2d 420; Federal Trade Comm. v. Royal Milling Co., 288 U. S. 212; Federal Trade Comm. v. Army & Navy Trading Co., 88 F. 2d 776; United States Retail Credit Assn. v. Federal Trade Comm., 300 F. 2d 212.)
That the courts in New York have taken the same position. Thus, in State of New York v. Operation Home Start (N. Y. L. J., Oct. 7,1966, p. 13, col. 7) the court said: “ Motion by the attorney general for an injunction restraining from using the name ‘ Operation Home Start ’ in their business and for other related injunctive relief is granted.
“ Respondents are in the business of selling educational books for preschool age children, similar in scope to the educational program recently established by and under the auspices of the Federal Government called ‘ Project Head Start ’ or otherwise commonly referred to as ‘ Operation Head Start. ’
‘ ‘ It has been conclusively demonstrated herein that respondents’ entire operation is calculated to confuse the public, and in fact does, at least indirectly, represent to the public that they are connected with the official government agency which operates the ‘ Head Start5 program. The similarity of names, the sales pitch used by respondents’ canvassers, the continuous references concerning the federal program, the identifying buttons worn, etc. all appear to be a deliberate, well-organized and planned attempt to mislead the public into believing that respondents are in some way connected with the federal agency and that the product sold is offered at a special bargain price to help those who may not qualify for the full benefits of ‘ Operation Head Start ’ but who cannot afford private pre-school training for their children. Respondents ’ acts clearly fall, therefore, within the restrictive or prohibitive provisions of section 950 of the *58 Penal Law and section 63 (12) of the Executive Law and must accordingly be enjoined. Settle order.”
Specifically, in regard to the use of the designation college, numerous Federal Trade Commission administrative cease and desist orders have been issued and upheld by the Federal courts prohibiting thé use of the word 1 ‘ college ” or ‘ ‘ university ’ ’ when the respondent, as is the case here, is not in fact an institution of higher education; has no formal entrance requirements, nor resident students; nor library or other educational facilities; nor faculty members who are trained and competent to teach accredited and recognized college undergraduate or graduate courses of any kind. (See 2 CCH Trade Regulation Reporter, par. 7577.90" Bethany College and Divinity School, 49 F.T.C. Decisions 1 [1952].)
In Branch v. Federal Trade Comm. (141 F. 2d 31) the court upheld an Federal Trade Commission cease and desist order prohibiting the use of the words ‘ ‘ institute ” or “ university ’ ’ in connection with the conduct of respondent’s business which the court described as a “ diploma mill. ’ ’
Most recently, the Federal Trade Commission has issued a cease and desist order against Ohio Christian Coll. Of Calvary Grace Christian Churches of Faith (Docket No. 8820, Aug. 21, 1972). The gravamen of the Federal Trade Commission action is almost identical to that of the state herein (even the defendant’s name is almost identical).
Likewise, has the Federal Trade Commission obtained cease and desist orders regarding misrepresentation of government affiliation. (See 2 CCH Trade Regulation Reporter, par. 7575.30.)
Defendant, by selling an honorary degree, has clearly violated the provisions of subdivision 2 of section 224 of the Education Law. Furthermore, such conduct is violative of the declared public policy of this State to preserve and maintain the integrity of the education process. (See State of New York v. Saksniit, 69 Misc 2d 554; Veazey v. Allen, 173 N. Y. 359, 368.)
By offering for sale, and sale, of honorary degrees in Hew York, defendant places in the hands of individuals the means and instrumentalities by and through which they may deceive and mislead others as to the degrees and other academic qualifications said individuals possess and has aided and abetted such individuals in the violation of section 224 of the Education Law. (See State of New York v. Saksniit, supra.)
In Oneida, Ltd. v. National Silver Co. (25 N. Y. S. 2d 271, 276), the court said: “ The rule is that he who induces another to *59 commit a fraud and furnishes the means, is equally guilty with the one who perpetrates the fraud.”
The Attorney-General is not acting in violation of the First Amendment of the United States Constitution. In Cantwell v. Connecticut (310 U. S. 296, 303) the United States Supreme Court in discussing the First Amendment said i£ the Amendment embraces two concepts — freedom to believe and freedom to act. The first is absolute, but, in the nature of things, the second cannot be. Conduct remains subject to regulation for the protection of society.”
Although in Cantwell the court struck down the State statute involved as unconstitutional the court continued (p. 306),££ Nothing we have said is intended even remotely to imply that, under the cloak of religion, persons may, with impunity, commit frauds upon the public. * * * Even the exercise of religion may
be at some slight inconvenience in order that the State may protect its citizens from injury. Without doubt a State may protect its citizens from fraudulent solicitation by requiring a stranger in the community, before permitting him publicly to solicit funds for any purpose, to establish his identity and his authority to act for the cause which he purports to represent. The State is likewise free to regulate the time and manner of solicitation generally, in the interest of public safety, peace, comfort or convenience.”
Therefore, in moving to enjoin, restrain and prohibit the defendants’ fraudulent and misleading practices in New York State the Attorney-General is not infringing upon the First Amendment guarantee of freedom of religion but, rather acting well within its right to prevent a fraud being committed on the citizens of this State.
Section 349 is entitled to construction parallel to subdivision 12 of section 63 of the Executive Law. Subdivision (b) of section 349 of the General Business Law provides in part: ££ In such action preliminary relief may be granted under article sixty-three of the civil practice law and rules. ’ ’
Preliminary injunctive relief has been granted to the Attorney-General in actions brought under subdivision (12) of section 63 of the Executive Law and the Business Corporation Law. (See State of New York v. Abortion Information Agency, 69 Misc 2d 825, affd. 37 A D 2d 142, affd. 30 N Y 2d 779; State of New York v. Saksniit, 69 Misc 2d 554, supra; Matter of State of New York v. Interstate Tractor Trailer Training, 66 Misc 2d 678, supra; State v. Remedial Education, Inc., 70 Misc 2d 1068; People v. Abbott Maintenance Corp., 9 A D 2d 757.)
*60 In the last several decades, a furious attack has been directed against traditional modes of education. Such educators as John Holt (“ How Children Learn ”) and Ivan Illick (“ Deschooling Society ”) urge the abandonment of formal schools and the assertedly ceremonial degrees they confer. But today, the ‘ ‘ free university” movement with its student organized courses as described in Hermann Hesse’s novels or radical polemics has been muted. The academic degree is still regarded as the passport to success, wealth and happiness, the lingua franca on the road of social mobility in America. The Ph. D. is looked on both as insuring its recipient a career coupling status and good pay, as well as assuring the public that the degree holder has a certain competence in his area of scholastic recognition. These are values which are worthy of legal protection.
Accordingly, the application by the Attorney-General for an injunction pursuant to subdivision (b) of section 349 of the General Business Law is granted.