*293 OPINION OF THE COURT
Edward J. Greenfield, J.
The Attorney-General of the State of New York has brought on this proceeding under subdivision 12 of section 63 of the Executive Law to enjoin Ralph Ginzburg, a well-known publisher and promoter, and two of his companies from engaging in repeated fraudulent and illegal acts and deceptive practices with respect to the advertised offer to the general public of "a world atlas for only $1.” The petition also asks for restitution and punitive and exemplary damages.
Respondents have moved to dismiss the proceeding, contending that subdivision 12 of section 63 of the Executive Law deals only with illegal business practices, and does not at all cover alleged false advertising. False advertising, it is contended, is covered only under article 22-A of the General Business Law (§ 349 et seq.), which provides for the bringing of a civil action upon prior notice, rather than a special proceeding, with a maximum $500 civil penalty.
Respondents insist that in no prior reported case has a proceeding under subdivision 12 of section 63 predicated solely on false advertising been sustained when challenged and that for the first 22 years of its existence, the statute was never so applied. It is necessary, therefore, to deal here with the applicability of article 5 of the Executive Law, concerning the organization, powers and duties of the Attorney-General’s office, and specifically the types of fraudulent or illegal business practices he may proceed against.
Section 63 of the Executive Law, dealing with the duties of the Attorney-General, provides, in subdivision 12: "Whenever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business, the attorney general may apply, in the name of the people of the state of New York, to the supreme court of the state of New York, on notice of five days, for an order enjoining the continuance of such business activity or of any fraudulent or illegal acts, directing restitution and damages * * * and the court may award the relief applied for or so much thereof as it may deem proper.” (Emphasis supplied.)
Respondents concede that false advertising is declared to be unlawful by section 350 of the General Business Law, and accordingly constitutes an illegal act. They contend, however, *294 that when the false advertising is attributed to an otherwise legitimate business, it is covered by the General Business Law, which covers "False advertising in the conduct of any business”, as distinguished from "repeated fraudulent or illegal acts * * * in the carrying on, conducting or transaction of business” — fraudulent or illegal transactions abetted by advertising, rather than a misleading advertisement by a legitimate enterprise.
The attempted distinction, while ingenious, will not hold up. While an isolated instance of misleading advertising will not suffice to warrant a proceeding under subdivision 12 of section 63 of the Executive Law, the repetition of false advertising of such a nature as to constitute "persistent fraud” goes to the very heart of the way the business is carried on, and may mark it as a fraudulent enterprise. It is sophistry to talk about false advertising alone — for the advertising is but the first step in an over-all scheme to lure customers, effect sales, collect money, and to give in return less than has been represented.
Certainly the facts which are alleged in this case, if sustained, would be sufficient to make out a case of repeated fraudulent acts in conducting a business. Respondent Ginzburg, previously known as a publisher of erotica and later of publications on how to make or how to save money, filed a certificate to conduct business under the impressive sounding name of "The United States Geographic Society”. Commencing in early 1979 and for a period of six weeks or more, he had full-page or half-page advertisements for the society placed in newspapers inviting readers to order a "world atlas” for only $1. Other ads promoting the same atlas appeared in the magazines American Business and Moneysworth, published by respondent Avant-Garde Media, Inc., a corporation headed and controlled by Ginzburg.
A typical advertisement, as it appeared in the New York Daily News on March 7, 1979, proclaimed in two-inch-high bold block letters: "world atlas: $1!” The text read:
"As a public service, the U.S. Geographic Society will send you a world atlas for only $1!
"The atlas depicts almost 100 nations — every continent, major political subdivision, city, topographical and geographic feature and body of water. The usual longitudinal and latitudinal grids are included, as are Azimuthal and Mercator projections, distance scales, etc., etc., etc. — plus several special *295 inset maps, compass reference points, all printed in eye-popping, glorious color.
"16pp., 25/s" X 414". The trifling $1 price includes sales tax and mailing! This makes the U.S. Geographic atlas practically free!!”
A handy coupon was attached for ordering up to three atlases per purchaser. Other ads promised "the biggest buck’s worth of your life.”
Who would not splurge $1 for such a bargain? Within a rather short time, over 200,000 orders for the atlas poured in, and they continued even after the ads had ceased. For their money, these purchasers received not an atlas which could be placed on a bookshelf* but a paper-bound vest-pocket pamphlet containing 8 or 10 sheets of 25/s inches by 414 inches miniature maps of the kind designed to be placed in pocket diaries or given away free in promotions. Respondents had purchased them from Hammond, Inc., for prices of 3 cents to 7 cents each. Hammond, a reputable map publisher, declared that it was shocked to learn these give-away items were being advertised and sold for $1. The cost of mailing was 8.4 cents per atlas, via bulk mail. It was further alleged that the names of those who responded to the ads were to be rented or sold to direct mail advertisers for a further profit of $7,000 to $11,000 per rental. Indeed, as stated, the offer to sell these items for $1 was "unprecedented.” No one had dared to do so before.
It is true that before an action can be commenced to impose a civil penalty for false advertising of up to $500 under section 350-c of the General Business Law, he must give notice by certified mail, and an opportunity to be heard. This is to allow an advertiser to attempt to dissuade the Attorney-General from bringing the action, with attendant unfavorable publicity, where convincing explanations are available. That does not mean that the Attorney-General is precluded from proceeding directly, where there is more than an isolated act of misleading advertising, but rather a persistent pattern of repeated fraudulent conduct, which includes advertising, to attempt to obtain not only a $500 civil penalty, but a Supreme Court injunction, restitution, damages, and the cancellation of any filed business certificate under subdivision 12 of section 63 of the Executive Law.
*296 There is no constitutional impediment — the respondent will still receive notice and the opportunity to be heard — the same opportunity which exists for every defendant or respondent. Nor does the fact that the Attorney-General is explicitly authorized to obtain an injunction against false advertising or misrepresentation in connection with the sale of securities or commodities (General Business Law, § 352) an implicit prohibition against injunction and damage suits for deceptive advertising in other business or commercial transactions which are not covered by the General Business Law. Surely the Legislature had no intention of permitting false advertising with impunity so long as the advertiser is willing to shoulder a penalty of up to $500 as an additional cost of doing business.
The Legislature clearly intended subdivision 12 of section 63 of the Executive Law to cover false advertising as well as other deceptive business practices. In his memorandum in support of the bill (L 1956, ch 592), then Attorney-General Javits spoke of the need to strengthen the legal remedies available "against frauds in the sale of articles, appliances and services and against fraudulent practices such as 'bait advertising’ ” (NY Legis Ann, 1956, p 92).
Article 22-A of the General Business Law came seven years later, and certainly not as an attempt to restrict or limit the powers of the Attorney-General. In fact, as pointed out in Matter of State of New York v Colorado State Christian Coll. of Church of Inner Power (76 Misc 2d 50, 54), the New York State Bar Association’s Committee on Antitrust Law, reporting on the analogous section 349 of article 22-A stated, " 'The statutes based upon persistent fraud do not provide adequate consumer protection since they leave the public open to repeated fraud before the remedy, by its own terms, can be invoked.’ ” And the Governor, in approving the bill, stated: "These powers granted to the Attorney General under these bills will afford a practical means of halting consumer frauds at their incipiency without the necessity to wait for the development of persistent frauds, as required under existing, narrow statutes”. (NY Legis Ann, 1970, pp 472-473.) Thus, it is clear that far from restricting the Attorney-General, article 22-A was viewed as placing an additional weapon at his disposal in the battle to protect consumers, and is parallel to and not in conflict with subdivision 12 of section 63 of the Executive Law.
Dispositive of respondents’ argument that article 22-A of the *297 General Business Law somehow supersedes and amends the Executive Law is subdivision 2 of section 350-d of the General Business Law which provides: "This article does not repeal the provisions of subdivision twelve of section sixty-three of the executive law.”
The statutes afford the Attorney-General the opportunity for parallel action. He may, as the facts dictate, choose one procedure or another. He may ask for a limited penalty for a misleading advertisement, or request an injunction, restitution and damages for persistent fraudulent conduct. The fact that the Attorney-General might not have availed himself in the past of subdivision 12 of section 63 of the Executive Law in a case based solely on false advertising does not preclude its applicability now.
Proceeding under that section deprives no one of his constitutional prerogatives. The hearing which is accorded prior to court action under section 350-c of the General Business Law is a matter of grace, not a matter of constitutional right.
Accordingly, respondents’ cross motion to dismiss is denied, and they are granted leave to serve an answer within five days of service of a copy of this order with notice of entry. Upon joinder of issue the clerk will place this matter on the Special Term Calendar for final resolution.

 Webster’s New International Dictionary (2d ed, Unabridged) defines "atlas” as "(4) a large square folio resembling a volume of maps — called atlas folio.”