OPINION OF THE COURT
Edward J. Greenfield, J.
The question presented in this case is whether a cause of action for "deceptive practice” under General Business Law § 349 (a) can be predicated on the fact that one party in a contract negotiation continuously modified the proposed terms so that the deal fell through. In other words, a contract, not having been consummated, can a plaintiff claim general and punitive damages in a cause of action for "fruitless negotiations”?
Plaintiff’s complaint alleges that he went to the Ford Lincoln-Mercury showroom in New York City to purchase a 1985 Lincoln Town Car, proposing to trade in his 1981 Volvo as part of the deal. Defendant offered to sell plaintiff the Lincoln he desired for 15% below the list price, or $20,790, less the trade-in allowance. Plaintiff was originally told he could get a $10,000 trade-in allowance subject to appraisal and that the sales manager would approve such a deal. When they met in *124 the showroom to prepare the proposed contract, the salesman told plaintiff he would have to reduce the used car appraisal to $9,000. Plaintiff agreed. Since plaintiff would continue to drive the Volvo until the new car was ready for delivery, the salesman stated that the trade-in would be dependent on the Volvo being delivered in an undamaged condition. Upon plaintiff pointing out that there already was body damage to the Volvo, the salesman reduced the proposed trade-in to $8,500. Plaintiff agreed but insisted that the Volvo should not be subject to mechanical inspection at the time of delivery. The sales manager indicated he would refuse to sign such a provision. That was the end of the deal. Plaintiff claims that each of these stages in the negotiation for the used car constituted a "deceptive practice”.
Plaintiff seeks damages of $1,000 on the first cause of action for the first reduction of the appraisal value of the Volvo; $500 on the second cause of action based upon the further reduction for physical damage; and $3,667 on the third cause of action for not getting the 15% discount below list, all allegedly pursuant to General Business Law § 349 (a).
There is a fourth cause of action for common-law fraud which alleges merely that "the deceptive acts of practice set forth * * * constitute common law fraud”, for which damages of $5,167 are sought.
The fifth cause of action seeks punitive damages of $1,000,-000 for "wanton and willful fraud”, together with treble damages up to $1,000 and attorney’s fees pursuant to General Business Law § 349 (h).
Defendants have moved to dismiss each of the causes of action asserted in the complaint under CPLR 3211 (a) (7) on the grounds that they fail to state a cause of action.
Even though, as a general rule, pleadings are to be liberally construed and the material allegations and inferences to be drawn are to be taken as true (Singer Co. v Stott & Davis Motor Express, 79 AD2d 227, 230-231), a cause of action must allege the violation of a legal duty by the defendant and damages sustained by the plaintiff. Both aspects are lacking in this complaint. Section 349 of the General Business Law (L 1970, ch 43, § 2) was adopted in order to "add a strong deterrent against deceptive business practice and supplement the activities of the Attorney General in the prosecution of consumer fraud complaints.” The purpose of the section is to provide to consumers "an honest market place where trust *125 prevail between buyer and seller.” (Memorandum of Governor Rockefeller approving L 1970, chs 43, 44, 1970 McKinney’s Session Laws of NY, at 3074 [Mar. 3, 1970].)
Section 349 (a) provides simply: "(a) Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.” Thus, no definition or guidance is provided as to what particular acts or practices come under the proscription of the statute. The statute was designed to parallel the Federal Trade Commission Act. (15 USC § 45; Matter of State of New York v Colorado State Christian Coll., 76 Misc 2d 50, 53.) The statute does not empower the Attorney-General, private parties or the courts the right to penalize whatever trade or business practices they may look at askance. This is demonstrated by the inclusion of subdivision (d). That subdivision provides that those practices which do not run afoul of the rules, regulations and statutes administered by the Federal Trade Commission or other Federal agencies do not come within the condemnation of the State statute. As is the case with General Business Law § 350-b dealing with false advertising, "it appears that the State Legislature intended to adopt requirements identical to those established by the Federal Trade Commission and to apply them to intrastate transactions in New York”. (Metropolitan N. Y. Retail Merchants Assn. v City of New York, 60 Misc 2d 805, 807.)
Powers are accorded to the Attorney-General to prosecute frauds and deceptive practices at their inception without requiring a pattern of persistent fraud, as the case would be under Executive Law § 63 (12). (State of New York v Ginzburg, 104 Misc 2d 292.) Under the statute, the Attorney-General is empowered to bring an action to enjoin such unlawful acts or practices or to obtain restitution (subd [b]). In addition, the law was amended in 1980 to permit a private person "who has been injured” to bring an action for injunction or "his actual damages or fifty dollars, whichever is greater”. Damages may be trebled up to $1,000 if it is found there has been a willful or knowing violation (subd [h]). (Memorandum of Governor Carey approving amendment, adding subd [h], L 1980, chs 345-346, 1980 McKinney’s Session Laws of NY, at 1867 [June 1980].)
The kinds of trade practices which have been considered as deceptive in the past include false advertising (Eastern Air Lines v New York Air Lines, 559 F Supp 1270; State of New York v Ginzburg, supra), pyramid schemes (State of New York *126 v Phase II Sys., 109 Misc 2d 598), deceptive preticketing (Benrus Watch Co. v Federal Trade Commn., 352 F2d 313, cert denied 384 US 939), misrepresentation of the origin, nature or quality of the product (Century Metalcraft Corp. v Federal Trade Commn., 112 F2d 443), false testimonial (Federal Trade Commn. v Colgate Palmolive Co., 380 US 374), deceptive collection efforts against debtors (In re Scrimpsher, 17 Bankr 999), deceptive practices of insurance companies (Sulnar v General Acc. Fire & Life Assur. Corp., 122 Misc 2d 597) and "bait and switch” operations (Electrolux Corp. v Val-Worth, Inc., 6 NY2d 556).
This apparently is the first time a right is claimed under General Business Law § 349 (a) to recover for a plaintiff’s frustration in spending several hours without reaching agreement on the ultimate price of a new car, less a trade-in. The complaint, a discursive 17-page document which narrates every moment of the negotiations, and even includes a page on what the plaintiff overheard in the next office with respect to some other customer disputing a $10 catalog charge, attempts to enumerate the deceptive acts and practices during the course of the negotiations. These include:
(a) reducing the used car appraisal from $10,000 to $9,000;
(b) keeping the customer waiting;
(c) failing initially to note the existing damage to the used car, and the reducing of the appraised value by another $500 after it was noted;
(d) the salesman giving oral assurance that his manager would waive mechanical inspection of the used car when, in fact, the sales manager refused to approve such a contract.
None of these allegations come remotely close to alleging such deceptive acts or practices as would fall under the proscription of General Business Law § 349 (a). If what is described is, indeed, a sales technique in extending negotiations and nibbling away at the customer’s initial expectations, it is part of a time-honored haggling or bargaining process, and is not in itself unlawful. This court is not prepared to hold that the making of counterproposals or causing one party to the negotiations to "sweat it out” during long periods of waiting are "deceptive practices” and hence unlawful. Plaintiff’s major complaint appears to be that he spent several fruitless hours in a negotiation. If the waiting time endured is now to constitute a basis for the recovery of damages, receptionists, doctors, lawyers and others who keep their reception *127 rooms stacked up had better beware! In the opinion of this court, the waste of time and erosion of patience by one party to a negotiation does not yet constitute a tort, nor is it a "deceptive practice”.
The practice of modifying proposed terms of a contract as the negotiations proceed is not at all analogous to "bait and switch” selling. The recognized deceptive practice of "bait and switch” involves an advertisement and offer of a product which is not bona fide because what the merchant actually has on hand and intends to sell is significantly different from that which drew the potential customer in. The technique, which is essentially a variant of false advertising, involves luring prospective purchasers through the "bait” of a desirable item, and then talking the customer into or steering him over to a less desirable item, presumably with greater profit margin for the seller. The trick is to lure the prospective "sucker” and then overwhelm him with glib salesmanship. The essence of this practice is that the seller really has no intention of delivering the product advertised. (People v Block & Kleaver, 103 Misc 2d 758, 761; Matter of People v Baumann & Co., 56 Misc 2d 153, 156.)
In this case, there can be no question but that the Ford Lincoln-Mercury showroom advertised Lincolns, sold Lincolns and had many in stock or available on order. The customer was not being lured by the promise of a Lincoln and then switched over to a 1928 DeSoto.
The ultimate trade-in deal that was offered was, of course, less than what was prospectively described over the telephone, but the appraisal was reduced after an actual inspection of the vehicle had demonstrated body damage. Plaintiff was free to accept or reject what was being offered for his used car. He twice indicated that he would accept the reduction in appraised value, but the deal fell through when the sales manager indicated that he would not approve.
Unquestionably, as the proposed contract itself indicated, there could be no firm or fixed deal until the proposed terms in the contract received the approval of the sales manager. Up to that time, the proposed contract remained an inchoate deal with no legal force or effect. It would be a revolutionary change in the law if we were to hold that a failure to agree on a contract created a new cause of action, or that a party to a negotiation could change the proposed terms or conditions only at the peril of being subjected to a lawsuit for "deceptive *128 practices”. The State Legislature, in authorizing remedies for "deceptive practices”, and the courts, which have a broad range in construing such generalized terms, surely have not been empowered to change the time-honored law that a suit on a contract will be upheld only upon a showing of "offer” and "acceptance”.
Plaintiff alleges an independent cause of action for punitive damages. Ordinarily, courts do not recognize the existence of an independent cause of action for punitive damages (Santos v Security & Law Enforcement Employees, Council 82, 80 AD2d 554) and punitive damages may be recovered only in connection with general damages, as a deterrent to punish the defendant and ward off similar future conduct. (Walker v Sheldon, 10 NY2d 401, 404.) In some cases, however, the right to recover punitive damages is specifically granted by statute. Section 349 (h) creates such a statutory right, but limits recovery by a private person to "actual damages or fifty dollars, whichever is greater”. In addition, the court is empowered to grant, in its discretion, three times the actual damages up to $1,000, if the court finds the defendant willfully or knowingly violated the statute. But a single offense, rather than a continuing course of deceptive conduct, is not a basis for relief thereunder. (Matter of People v Alexander’s Dept. Store, 42 AD2d 532.) Plaintiff herein alleges damages of $5,167, based upon the reduced trade-in appraisal of $1,500 and his loss of the deal which involved a discount of 15% from the sticker price. It is clear that none of these items are actual damages. Plaintiff did not part with his used Volvo, and the deal for the new Lincoln at a 15% discount did not come to fruition. Since the actual damages were zero, trebling that amount would still leave the plaintiff with zero. Under no circumstances could he assert a right to punitive damages of $1,000,000, when the statute expressly limits recovery under the best of circumstances to $1,000.
Nor is there any basis for plaintiffs’ fourth cause of action for common-law fraud. The allegations of misrepresentation, scienter, reliance and damage are wholly lacking. All we have is the blanket allegation that the deceptive acts and practices previously set forth constitute "common law fraud.” Such a conclusory statement does not meet the requirements of CPLR 3016 (b). The damages alleged are the reduction of appraisal value and loss of the discount. Apart from the other requisite elements, alleged reliance by the plaintiff on any misrepresentations is wholly lacking. As in the long-abolished action for *129 seduction, it must be established not only that the defendant used guile, promises, enticements, artifice and deceit, but that plaintiff changed position and consummation ensued. (79 CJS, Seduction, § 1, at 955.) Clearly, plaintiff did not change his position. The contract was not consummated. He was induced to part with no money, nor did he give up his old car. Ultimately, the parties agreed to disagree, and plaintiff, far from relying on any representations of defendant, walked away from the deal. Plaintiff lost no property or rights as a result of any alleged fraud, nor did he lose any enforceable right to any property.
Plaintiff has suffered no damage, apart from loss of time and loss of pride. Indignation is not, by itself, compensable. No deceptive practice, no common-law fraud and no basis for punitive damages has been set forth. The court recognizes no cause of action for "fruitless negotiation” or "frustration”. Even when there has been an executed contract and a consummated sale, frustration and disappointed expectations do not of themselves give rise to a cognizable cause of action. (Sherman v Manhattan Ford Lincoln-Mercury, 104 Misc 2d 1.) Plaintiffs’ complaint is dismissed in its entirety, with costs, but without attorney’s fees.