The City of New York and Lorelei Salas, as Commissioner of the New York City Department of Consumer Affairs, Plaintiffs,

against
T-Mobile USA, Inc., MetroPCS New York LLC, 1930 Wireless Inc., 2nd Ave Wireless Inc., et al., Defendants.


Index No. 451540/2019

Barry Ostrager, J.

Following a limited investigation using its subpoena power to obtain documents, the City of New York and the New York City Department of Consumer Affairs (hereafter collectively "DCA") commenced this action by Summons and Complaint on September 4, 2019 against T-Mobile USA, Inc. ("T-Mobile") and its subsidiary MetroPCS New York, LLC ("MetroPCS"), as well as 42 dealers, seeking broad declaratory and injunctive relief, significant civil penalties, and restitution based on alleged violations of the Consumer Protection Law and regulations (NYSCEF Doc. No. 1). Approximately 34 dealers timely filed Answers in October 2019 (NYSCEF Doc. Nos. 63, 64 and 73); the remaining dealers have not yet responded to the Complaint. Before the Court at this time is the pre-answer motion by T-Mobile and MetroPCS to dismiss this action pursuant to CPLR 3211(a)(1) and (7) based on documentary evidence and failure to state a cause of action. DCA has vigorously opposed the motion. None of the dealers appeared in connection with this motion. For the reasons stated below, the motion is denied without prejudice to a summary judgment motion once discovery has been completed.
Background Facts
The following facts are drawn from the Complaint and the motion papers and are undisputed unless otherwise indicated. T-Mobile offers wireless cellular network services to consumers in the City of New York. The focus of the Complaint in this action is T-Mobile's alleged practice of targeting lower income consumers under its "lower-priced prepaid (no contract) wireless brand" Metro by T-Mobile ("Metro"), known until 2018 as "MetroPCS" (Complaint ¶1). DCA asserts that T-Mobile deceptively markets, sells, leases, and finances cell phones and services through 12 Corporate Stores directly operated by its subsidiary MetroPCS and through various independent "authorized dealers" with whom MetroPCS contracts ("Dealer [*2]Stores").
As detailed in the Affirmation of Jay Musoff in Support of the Motion to Dismiss (NYSCEF Doc. No. 66), DCA began its investigation into T-Mobile's practices by serving a subpoena on December 18, 2018 requesting documents pertaining to the legal relationship between T-Mobile, MetroPCS and certain MetroPCS independent dealers, information related to the sale of phones, disclosures related to the sale of used phones, advertisements, and agreements with third-party financing companies. T-Mobile responded with objections and the production of some documents. T-Mobile also asserted it saw no evidence of wrongdoing, and it requested a meeting with DCA to discuss the issues.
DCA replied by serving a second subpoena on March 18, 2019, to which T-Mobile responded with some objections, some additional documents, and another request to meet. DCA replied with a third subpoena on April 30, 2019, seeking certain information for a specific list of phone numbers. T-Mobile supplied information and again requested a meeting. DCA served its fourth subpoena on June 4, 2019, and T-Mobile again requested a meeting.
DCA then sent T-Mobile and MetroPCS notices of intent to commence lawsuits, dated August 21, 2019 ("Pre-litigation Notices", NYSCEF Doc. Nos. 67 and 68). The letters stated that "based on an investigation of your business practices, [DCA] finds that you have engaged in repeated, multiple, or persistent deceptive trade practices" in violation of New York City's Consumer Protection Law. The practices listed included "selling used phones as though they were new"; "deceiving consumers about financing"; "overcharging consumers"; "providing defective receipts"; "failing to provide a receipt"; and "making deceptive representations about the Metro by T-Mobile refund policy." In addition to citing the applicable provisions of the CPL, the Notices included a list of store addresses, divided into groups based on the particular violation alleged. The Notices stated that DCA planned to institute an action unless T-Mobile and MetroPCS demonstrated in writing within five days that the "persistent, multiple, or repeated violations of the CPL [Consumer Protection Law] specified above have not occurred." T-Mobile denied any wrongdoing and requested a meeting yet again, indicating that it could not respond more specifically in writing as the allegations were too vague. No meeting was held, and DCA filed the Complaint commencing this action on September 4, 2019.
The Complaint consists of 143 paragraphs spanning 34 pages plus various schedules with consumer names matched to store addresses where the alleged violations occurred. Although DCA demands eleven different forms of relief, its Complaint asserts only two causes of action. The First Cause of Action alleges that T-Mobile, MetroPCS and various specified dealers engaged in deceptive trade practices in violation of NYC Code § 20-700. The claims charges T-Mobile with at least 2,260 violations and MetroPCS with at least 57 violations, and also charges various specifically named dealers with a number of violations. In that Cause of Action, DCA asserts that "NYC Code § 20-700 prohibits deceptive trade practices, including bars 'any deceptive or unconscionable trade practice in the sale of any consumer goods or services[.]' NYC Code § 20-700. Deceptive practices include 'representations that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, or secondhand' and 'the use, in any oral or written representation, of exaggeration, innuendo, or ambiguity as to a material fact or failure to state a material fact if such use deceives or tends to deceive[.]' NYC Code § 20-701(a)." (Complaint ¶134). The specific conduct alleged includes Violations relating to 30-Day Guarantees, Virtual Chat practices, Used Phone Deception, Financing, and Overcharging. For each Violation that occurred over the past three years, DCA demands the disgorgement of all [*3]revenue received plus civil penalties of $350 for each and every Violation by occurrence, increased to $500 if the Violation was knowing.
In the Second Cause of Action, DCA charges T-Mobile and MetroPCS with at least 25 violations and 20 dealers with at least 1 violation each, for failing to properly document transactions in violation of 6 RCNY § 5-32. Specifically, DCA asserts that "6 RCNY § 5-32(b) provides that sellers of consumer goods and services must 'offer a consumer a receipt for any retail purchase if the amount of the purchase is twenty dollars or more' and must 'provide a consumer with a receipt upon request for any retail purchase if the amount of the purchase is between five and twenty dollars.' Rule 6 RCNY § 5-32(c) provides that a seller's receipt must contain 'the amount of money paid for each item,' 'the total amount of money paid including a separate statement of tax,' 'the date of the purchase,' and 'the legal name and address of the seller in accordance with Section [entitled] Legal Name.' For 'a business that is not a corporation or a partnership,' [the term] 'legal name' means 'the name of at least one owner[.]' 6 RCNY § 5-01." ,DCA demands civil penalties of $350 for each and every Violation by occurrence, increased to $500 if the Violation was knowing.
In addition to these specifics within each cause of action, the Complaint also includes a detailed discussion of the relevant Consumer Protection Law ("CPL"); namely, Code § 20-700 et seq. and 6 RCNY § 5-01 et seq. The CPL is broad in scope, barring "any deceptive or unconscionable trade practice in the sale . . . of any consumer goods or services[.]" NYC Code § 20-700. Deceptive practices include "representations that goods . . . are original or new if they are deteriorated, altered, reconditioned, reclaimed, or secondhand" and "the use, in any oral or written representation, of exaggeration, innuendo, or ambiguity as to a material fact or failure to state a material fact if such use deceives or tends to deceive[.]" NYC Code § 20-701(a). Deceptive practices are not limited to representations made to consumers but may include those made to third parties in a way that tends to deceive consumers. Id. The CPL also requires businesses to provide consumers with detailed, itemized receipts. See 6 RCNY § 5-32. Finally, the CPL provides that "[a] seller of a used item must disclose clearly that the item is used, in any advertisement or sales transaction concerning the used item" and that "[w]ords such as 'used,' 'antique,' 'demonstrator,' 'floor model,' 'rebuilt,' 'renovated,' 'restyled,' or 'remodeled' may be used to indicate that an item is used." 6 RCNY § 5-36(a)-(b). "To establish a cause of action under [the CPL] it need not be shown that consumers are being or were actually injured." NYC Code § 20-703(e). Violations of these provisions of the CPL carry civil penalties of up to $350, and $500 for "knowing" violations. NYC Code § 20-703(a)-(b).
The Standard of Review
The Court's analysis is governed by the standard of review applicable to motions to dismiss as articulated by the Court of Appeals in the oft-cited case of Leon v Martinez, 84 NY2d 83, 87-88 (1994) (citations omitted): "On a motion to dismiss pursuant to CPLR 3211, the pleading is to be afforded a liberal construction We accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine [under CPLR 3211(a)(7)] only whether the facts as alleged fit within any cognizable legal theory Under CPLR 3211 (a) (1), a dismissal is warranted only if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law ".
The Pre-Litigation Notices are Sufficient
In support of their request for dismissal, T-Mobile and MetroPCS first argue that the [*4]DCA violated due process of law and the CPL by failing to provide adequate notice of the claims in the Pre-Litigation Notices discussed above. The claim fails. The movants correctly note that the CPL at Code § 20-703(c) establishes a "Five-Day Rule" which requires that: "Before instituting an action under this subdivision, the commissioner shall give the prospective defendant written notice of the possible action, and an opportunity to demonstrate in writing within five days, that no repeated, multiple, or persistent violations have occurred." However, the movants have cited no case indicating that the Code establishes a constitutional right to a Pre-litigation Notice that accords due process of law. And while there appears to be no case law interpreting the 5-Day Rule, the DCA appropriately analogizes to the requirement that the Attorney General provide notice under the State's false advertising statute, General Business Law § 350, and various trial court cases holding that pre-litigation notice and an opportunity to be heard is "a matter of grace, not a matter of constitutional right." State v Ginzburg, 104 Misc 2d 292, 295 (Sup. Ct., NY Co. 1980); see also State v Security Elite Group Inc., 2015 WL 9271698 (Sup. Ct., NY Co. 2015).
Further, the CPL Five-Day Rule quoted above does not require a detailed statement of the DCA's "possible action" beyond that included in the Pre-Litigation Notices issued here. As detailed above, the Notices described the nature of each alleged violation, the applicable provisions of the CPL, and a list of store addresses, divided into groups based on the particular violation alleged. That information satisfied the requirements of the Five-Day Rule in the CPL.
The Heightened Pleading Standard in CPLR 3016(b) Does Not Mandate Dismissal
Turing to the Complaint, defendants argue that because certain of the alleged violations include an element of misrepresentation, the heightened pleading standard set forth in CPLR 3016(b) applies, and the Complaint fails to meet that standard. That statute reads as follows:
Fraud or mistake. Where a cause of action or defense is based upon misrepresentation, fraud, mistake, willful default, breach of trust or undue influence, the circumstances constituting the wrong shall be stated in detail.
DCA in opposition disagrees and cites various cases holding that the State's analogous consumer protection statute, GBL § 349, is not subject to a heightened pleading standard. See, e.g., Pelman ex rel. Pelman v McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005); Koenig v. Boulder Brands, Inc., 995 F. Supp. 2d 274, 287 (S.D.NY 2014); M & T Mortg. Corp. v. White, 736 F. Supp. 2d 538, 570 (E.D.NY 2010). Although defendants in reply cite some cases suggesting that CPLR 3016(b) is not limited to common law fraud, as DCA contends, and also applies to some statutory claims, most of defendants' cases are trial level decisions that do not trump the cases cited by DCA. Further, the CPL itself does not include any language supporting the application of a heightened pleading standard to a CPL claim.
Even if CPLR 3016(b) did apply, the Court finds that the lengthy Complaint with Schedules described above — that even include consumer names — satisfies the pleading standard. The Court is guided on that point by the March 3, 2020 decision by the First Department in Cohen Bros. Realty Corp. v Mapes, 2020 WL 1017577, at *2, wherein the Appellate Division reversed the trial court and reinstated a fraud claim that had been dismissed for lack of particularity, finding that "plaintiffs sufficiently pleaded fraud causes of action with the information available to them in a pre-discovery posture(see e.g. Houbigant, Inc. v. Deloitte & Touche, 303 AD2d 92, 98—100, 753 N.Y.S.2d 493 [1st Dept. 2003])" (emphasis added). In this case as well, plaintiff DCA has sufficiently pleaded its claims with the [*5]information available to them in a pre-discovery posture.
The DCA Claims against T-Mobile Survive Dismissal
T-Mobile argues that it cannot be held liable for the alleged unlawful conduct by independent dealers because T-Mobile has no contract with those dealers giving them actual authority to act on behalf of T-Mobile, and the facts do not support a theory of apparent authority. DCA argues that under the standard applicable to dismissal motions pursuant to CPLR 3211(a)(7), the allegations when accepted as true state a claim that survives dismissal at the pleading stage. Further, the website is owned by T-Mobile, making T-Mobile liable for any misrepresentations there.
DCA asserts T-Mobile is liable for two types of deception: (1) the "30-Day Guarantee" was, in fact, only a limited 7-day return policy with several conditions; and (2) the "Virtual Chat Assistant" failed to fully and correctly disclose the return policy. The Court finds DCA has adequately alleged at the pleading stage that T-Mobile is liable for deceptive acts by the Corporate Stores run directly by T-Mobile's subsidiary MetroPCS because those stores create the impression of agency based on the relationship between the parties. And at a minimum, the pleadings give rise to a factual question whether T-Mobile is liable under the apparent authority doctrine for the conduct of the Dealer Defendants who are represented to be "authorized" dealers not only in their signs but on the website and via conduct in the stores. In sum, the Court rejects T-Mobile's dismissal request, as the Court cannot find as a matter of law at this pre-discovery stage of the case that the Dealers were at all times acting outside the scope of their authority without T-Mobile's consent so as to defeat a claim of apparent authority.
The DCA Claims against MetroPCS Survive Dismissal
DCA charges MetroPCS with 5 types of deception in its stores: selling used phones as if new; financing terms that double the cost of the phone; overcharges via improper taxes and activation payments; failure to provide receipts; and defective receipts. MetroPCS appears not to dispute its liability for the conduct of Corporate Stores, and it acknowledges that it has executed Indirect Dealer Agreements ("IDA") that give the Dealer Defendants actual authority to act on behalf of MetroPCS. However, MetroPCS argues that the IDA gives the Dealers only limited actual authority that does not extend to wrongful conduct such as that alleged here.
The Court finds that DCA's allegations suffice to state a claim of liability based on a principal-agent theory at the pleading stage, as issues exist as to the level of control of the Dealers by MetroPCS and whether all the conduct at issue was beyond the scope of authority. MetroPCS cannot rely on the adverse interest exception to the agency theory because, contrary to the situation in City of New York v Crum & Forster Ins. Brokers, Inc., 2019 WL 2422667 (Sup. Ct., NY Co. 2019), defendant has not established as a matter of law that the Dealers were at all times "acting antagonistically" to the interests of MetroPCS.
Dismissal of the Penalty request is Premature
T-Mobile and MetroPCS do not dispute that the CPL authorizes the DCA to impose penalties for violations of the Consumer Protection Law. And DCA correctly notes that Code § 20-703 authorizes the imposition of financial penalties of $350 for unlawful conduct, increased to $500 if the conduct is knowing, without establishing actual injury. Defendants argue, however, that the penalties must be dismissed because DCA is seeking to assess the fine for each and every instance of wrongful conduct, when DCA is authorized to only assess a single penalty for each type of conduct. The Court agrees with DCA that the issue of penalties is premature and declines to make any finding at the pleading stage as to the amount of penalties, if any, that DCA [*6]can assess.
Conclusion
Based on the extensive papers submitted by counsel and arguments on the record on March 13, 2020, the Court denies the motion to dismiss by defendants T-Mobile USA, Inc. and MetroPCS New York, LLC. Defendants shall efile an Answer to the Complaint within 30 days of the date of this decision, and all counsel shall appear in Room 232 for a preliminary conference on Tuesday, June 16, 2020 at 9:30 a.m.
Dated: March 23, 2020