James P. Crone, II, et al.

v.

Richmond Newspapers, Inc.

Record Nos. 871406, 871407, 871408,
871409, 871410, 871411 and 871412

September 22, 1989

Present: All the Justices

*Thomas W. Williamson, Jr. (Louis D. Snesil; James M. Minor; Emroch & Williams; Minor & Associates*, on briefs), for appellant.

*J. Edward Betts (Alexander Wellford; Craig T. Merritt; Lisa A. Davis; Christian, Barton, Epps, Brent & Chappell*, on brief), for appellee.

Justice Compton delivered the opinion of the Court.

In our first opportunity to address Virginia's Retail Franchising Act, Code §§ 13.1-557 to -574 (the Act), we consider whether a contract for distribution of newspapers from vending machines is a franchise protected under the Act so that damages may be recovered for cancellation of the contract allegedly without reasonable cause.

In 1987, the seven appellants, James P. Crone, II, Pearline F. Gillaspie, William H. Phillips, II, Christopher K. Mudd, Douglas G. Williams, Richard L. Atkinson, and William R. Creekmur (collectively, the distributor) filed virtually identical, separate motions for judgment, later amended, against Richmond Newspapers, Inc. (RNI). The plaintiffs alleged violation of the Act and sought damages arising from termination by RNI of certain identical Bulk Distributor Contracts (the contract).

The defendant demurred to the motions for judgment. The trial court sustained the demurrers, granting leave to amend. Following amendment by the plaintiffs, the defendant again demurred. Those demurrers likewise were sustained. We awarded the plaintiffs separate appeals from the February 1988 orders dismissing the actions and consolidated the cases for briefing and argument.

In 1972, the General Assembly passed the Act, adding it as Chapter 8 to Title 13.1 of the Code. Acts 1972, ch. 561. The enactment followed a study and report on retail franchising in Virginia by the Virginia Advisory Legislative Council. H. Doc. 2 (1972). The policy of the Commonwealth, as declared in the Act, is "to regulate commerce partly or wholly within the Commonwealth of Virginia" in order to correct "such inequities as may exist in the franchise system so as to establish a more even balance of power between franchisors and franchisees; to require franchisors to deal fairly with their franchisees . . . and to provide franchisees more direct, simple, and complete judicial relief

against franchisors who fail to deal in a lawful manner with them." Code § 13.1-558.

The Act further provides, as pertinent to this controversy, that a franchise is "a written contract or agreement . . . between two or more persons" in which a franchisee "is granted the right to engage in the business of offering, selling or distributing goods or services at retail under a marketing plan or system prescribed in substantial part by a franchisor;" and the "operation of the franchisee's business pursuant to such plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising or other commercial symbol designating the franchisor or its affiliate." § 13.1-559(b)(1) and (2).

■ The present dispute stems from the following sentence in § 13.1-559: "This chapter shall apply only to a franchise the performance of which contemplates or requires the franchisee to establish or maintain a place of business within the Commonwealth of Virginia."

■ The Act further provides: "It shall be unlawful for a franchisor to cancel a franchise without reasonable cause . . . ." § 13.1-564. Also, the Act permits a franchisee who has suffered damages as the result of any violation of the foregoing section to bring an action against its franchisor to recover such damages, as well as reasonable attorney's fees and costs. § 13.1-571(a). In addition, the Act prescribes criminal penalties for certain specified conduct by franchisors. § 13.1-569.

Even though we will refer to the distributor and the contract in the singular, our comments will apply with equal force to each of the respective plaintiffs and to their individual contracts. Because the cases are before us on rulings upon demurrers, we shall recite the facts alleged as if they are true, according to the familiar principle that a demurrer admits the truth of all material facts properly pleaded.

In 1969, RNI, engaged in the publication and sale of daily newspapers, established a system for the dissemination of its single sales non-subscription newspapers in the Richmond metropolitan area. RNI divided the area into 12 exclusive territories called "rack accounts" (RAs) and contracted with different individuals to distribute newspapers within each territory. Subsequently, the distributor agreed to distribute newspapers for RNI in a specified RA. Each RA contained definite locations for distribution of the newspapers.

Periodically, as the price of the newspapers changed, the distributor entered into new written contracts identical in all respects to the original agreement except for the price of the newspapers. Pursuant to the series of contracts, the distributor purchased newspapers from RNI and resold them at retail in coin-operated racks. The contracts granted to the distributor a right to distribute newspapers by a marketing plan or system prescribed in substantial part by RNI. The distributor's business was substantially associated with the logotype used by RNI. During the first years of the relationship, the distributor rented from RNI all racks used for sale of the newspapers. Beginning in 1974, RNI permitted the distributor to purchase racks exclusively through RNI.

In late 1983 or early 1984, the distributor executed another, and what proved to be the final, contract to distribute newspapers for RNI in the distributor's territory. That contract varied from the prior contracts and included a mutual release provision barring all claims arising under any former contract.

The new contract, titled "Bulk Distributor Contract," designated on its cover the applicable RA the distributor was required to service. According to the contract, the distributor agreed to purchase the number of copies of newspapers required by the contract at specified wholesale rates, with RNI reserving the right to change the rates. The distributor agreed to deliver newspapers in the quantities specified by RNI to certain distribution points designated by RNI. The distributor agreed to "service" the distribution points "in a proper and reasonable manner."

If the distributor employed racks at the distribution point, they were to be maintained according to specifications contained in an appendix to the contract. The appendix delineated the general physical condition of the racks, their appearance, the color of paint on the racks, and the manner the racks were to be secured. It also required that the RNI logo be displayed. In addition, the new contract required the distributor to file with RNI written reports of sales.

The contract declared the distributor to be an independent contractor responsible for providing the equipment and supplies necessary for the satisfactory performance of the contract. It provided that the distributor "shall conduct his business as he deems best, according to his own means and methods, without the supervision or control of RNI," provided "the goodwill, business reputation,

or circulation of RNI and/or its Newspapers is not injured thereby."

The distributor alleges that certain locations constitute "a place of business" within the Commonwealth: the RA, the territory to be serviced within the Richmond metropolitan area; the distribution points where the vending machines were located; and, the distributor's home address where, it is alleged, the distributor maintained an office, stored supplies, stored racks, maintained a telephone, received mail, and kept vehicles used in the distribution. This address, furnished RNI by the distributor on a "Bulk Distributor Information" form, was the location at which RNI communicated with the distributor concerning business matters arising out of the contract.

In fulfilling the obligations under the contract, the distributor hired employees and purchased racks, vehicles, tools, coin counting machines, and office equipment. By early 1986, the distributor had expanded its operation by increasing the number of distribution sites. In March 1986, however, RNI cancelled the contract, allegedly without reasonable cause, and commenced distribution with its own employees at all the locations serviced by the distributor. As a result, the distributor alleges, the franchise has been destroyed and future profits have been lost, resulting in substantial damages for which recovery is sought.

The trial court, endorsing the legal position of RNI, ruled that the contract was not a franchise within the meaning of the Act and thus was not protected by the Act. The court, referring to the language of the disputed provision of the legislation, stated that the Act "does not apply unless there is a franchise agreement 'which contemplates or requires the franchisee to establish or maintain a place of business within the [Commonwealth] of Virginia.' "

The court went on to say: " 'A place of business' connotes a specific geographic location from which the franchisee conducts the retail business contemplated in the franchise agreement. It contemplates a building or premises over which the franchisee exercises some control or dominion at which customers are received and sales are made." The court then observed that one would be required "to stretch the ordinary meaning of place of business" to include (1) a service area covering several city blocks, (2) a free-standing vending machine, or (3) a distributor's home. The court said that nothing in the contract demonstrated an intention of the

parties that "any place of business such as a home office" be established in the Commonwealth, stating that "the business could be serviced from an automobile or from a place outside the state."

On appeal, the distributor contends that the trial court has misconstrued the plain language of the Act. We agree.

Initially, the rule of statutory interpretation to be applied to the Act must be established. The Act is designed to equalize the balance of power between franchisors and franchisees and thus is remedial legislation. *See* Code § 13.1-558. Ordinarily, a remedial statute must be construed liberally. *City of Richmond* v. *Richmond Metropolitan Authority*, 210 Va. 645, 648, 172 S.E.2d 831, 833 (1970). The Act, however, contains criminal sanctions applicable to franchisors and is a trade regulation statute in derogation of the common law. Under those circumstances, therefore, the Act must be construed strictly. *Cartwright* v. *Commonwealth*, 223 Va. 368, 372, 288 S.E.2d 491, 493 (1982). But that rule of construction "does not abrogate the well recognized canon that a statute or ordinance should be read and applied so as to accord with the purpose intended and attain the objects desired if that may be accomplished without doing harm to its language." *Gough* v. *Shaner*, 197 Va. 572, 575, 90 S.E.2d 171, 174 (1955), *quoted in Cartwright*, 223 Va. at 372, 288 S.E.2d at 493.

We now apply the foregoing rule in the interpretation of the disputed provision of the Act, a provision which we regard as clear and unambiguous. According to the provision, the Act applies only to an agreement "the performance of which contemplates or requires the franchisee to establish or maintain a place of business within the Commonwealth of Virginia." A plain reading of that provision, in the context of the whole Act, demonstrates to us that it simply requires the business transacted under the franchise agreement to have a nexus to the Commonwealth. The proviso merely records the intention of the General Assembly to legislate constitutionally by regulating business within the State in a field which often involves transactions in interstate commerce.

In our view, the provision is not so restrictive, as RNI contends, as to place the burden upon a party seeking protection of the Act to show that a fixed physical site where business is transacted, such as a shop, office or warehouse, has been established. The franchisee need not prove, for example, that a freestanding, coin-operated newspaper rack, resting at a street corner unattended by any salesperson, meets some technical definition of "place of busi-

ness." Rather, the party seeking coverage of the Act must show only a business connection or link with this State. The distributor in this case has alleged such a connection.

Here, a Virginia resident has agreed to distribute a product from a specified location within a designated Virginia RA territory. In other words, the obligations of the contract require the distributor to perform business from "places" within the State. As we interpret the Act, the focus is not on whether a single vending machine, a RA territory, or the distributor's residence qualify independently as a "place of business." So long as the places where the distributor operates under the contract, disseminating RNI's product, are within the State, the required nexus exists.

Because we have decided that the disputed statutory provision is plain and unambiguous, we do not reach for discussion, of course, the contentions of the parties based on various rules for the construction of statutes of doubtful meaning. If statutory language is clear and unambiguous, there is no need for construction by the court; the plain meaning of the enactment will be accorded it. *Brown* v. *Lukhard*, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985).

Likewise, we do not reach for decision the distributor's claim that a wholesale component of the contract, in which newspapers were to be sold by the distributor to store owners at wholesale, may be the subject of a claim for consequential damages resulting from alleged destruction of the franchise. The Act only applies to retail businesses. In a letter opinion, the trial court stated that "all agree that this [wholesale] part of the contract cannot be the basis of an action" under the Act. Apparently, the distributor at the trial level agreed that such a claim was not covered under the Act and we will not permit retraction of that concession at the appellate level. Even if there was no such concession, the distributor's assignments of error, which merely state that the trial court erred in sustaining the demurrers, are insufficient under these circumstances to preserve that specific issue on appeal. *See* Rule 5:25.

Finally, we do not reach for decision the contention of RNI that the mutual release provisions of the final contract bar all claims for damages preceding that contract. The trial court expressly declined to rule on that question and there is nothing for this Court to review on the subject.

For these reasons, we hold that the trial court erred in sustaining the defendant's demurrers. The orders of dismissal will be reversed and the cases will be remanded for further proceedings.

*Reversed and remanded.*