## DELORES LOVE

### V.

## DURASTILL OF RICHMOND, INC., ET AL.

Record No. 901355

September 20, 1991

Present: Carrico, C.J., Compton, Stephenson, Russell,* Whiting, Lacy, and Hassell, JJ.

---

\* Justice Russell participated in the hearing and decision of this case prior to the effective date of his retirement on July 1, 1991.

*Neil Kuchinsky* for appellant.

*Terrence K. Martin (Gibson, Martin, Overman, Fisher and Carpenter*, on brief), for appellees.

JUSTICE WHITING delivered the opinion of the Court.

In this case, we consider whether a particular sales promotion program is a "pyramid promotional scheme" as defined in Code § 18.2-239(a).

Delores Love paid $5,000 to Durastill of Richmond, Inc. and Durastill of Virginia, Inc. (collectively Durastill) in return for certain contractual rights. First, Love became an "independent distributor" of water purification stills sold by Durastill; second, she was entitled to enter Durastill's training program for distributors; and third, Love was to receive $1,250 for each new distributor she recruited to Durastill's program. Upon paying $5,000 to Durastill, each new distributor would acquire the same rights as Love. The first two provisions were in writing, the third was an oral agreement.

Love entered, but did not complete, Durastill's training program. On June 1, 1989, Love filed this action at law to recover her $5,000 payment, $2,000 in punitive damages, and reasonable attorney's fees. Love claimed: (1) that the contract was void because (a) it was procured by fraudulent misrepresentations, and

(b) it was a pyramid promotional scheme proscribed by Code § 18.2-239; and (2) that Durastill breached its contract by failing "to provide her with materially-useful training."

After a non-jury trial, the trial court entered judgment for Durastill. The court found that Durastill's sales promotion program was "a process whereby part of the money paid by Mrs. Love was consideration for the opportunity to receive compensation in return for inducing other persons to become participants in the program." Nevertheless, because "there was no possibility of a carry over of commissions to persons subsequently recruited by [Love's] recruits," the court concluded that the contract was not "the type pyramid or promotional scheme prohibited by" Code § 18.2-239. Love appeals only this holding.

The parties agree that the issue on appeal is whether the trial court's factual finding that Love's payment for the opportunity to be compensated for recruiting other program participants is sufficient to establish a "pyramid promotional scheme" within the statutory proscription.

First, we consider the pertinent provisions of Code § 18.2-239:

Every person who contrives, prepares, sets up, operates, advertises or promotes any pyramid promotional scheme shall be guilty of a Class 1 misdemeanor. For the purposes of this section:

(a) *"Pyramid promotional scheme"* means any program utilizing a pyramid or chain process by which a participant gives a valuable consideration for the opportunity to receive compensation . . . in return for inducing other persons to become participants in the program.

Durastill contends that a necessary element of a pyramid promotional scheme is a multi-layered vertical integration between a distributor, the distributor's recruits, and the recruits of such recruits whereby each person in the pyramid receives compensation from the efforts of those in the pyramid beneath her or him. Thus, according to Durastill, because its program limits Love's commissions to those from her direct sales of Durastill distributorships and products, its program cannot be a pyramid promotional scheme within the purview of Code § 18.2-239.

A "pyramid sales scheme" is defined as "[a] device, illegal in many states, in which a buyer of goods is promised a payment

for each additional buyer procured by him." Black's Law Dictionary 1237 (6th ed. 1990). Neither that dictionary definition nor the statutory definition of Code § 18.2-239(a) indicates that there must be a multi-layered vertical chain of compensation flowing to *intermediate* participants from the efforts of their recruits.

Nevertheless, Durastill implies that we have already adopted its construction of Code § 18.2-239(a) in *Bell* v. *Commonwealth*, 236 Va. 298, 374 S.E.2d 13 (1988), and *Thaxton* v. *Commonwealth*, 211 Va. 38, 175 S.E.2d 264 (1970). We do not agree.

Although in both cases there were contractual provisions for the multi-layered vertical integration that Durastill claims to be an essential part of a statutory violation, neither case turned upon the definition of a "pyramid promotional scheme." In *Bell*, the issue was whether the participants gave the statutorily required "valuable consideration." 236 Va. at 302, 374 S.E.2d at 16. In *Thaxton*, the decision turned upon whether the participants were agents of the out-of-state promoter, thus requiring the promoter to domesticate in Virginia. 211 Va. at 39, 175 S.E.2d at 265.

■ Although we agree with Durastill that this penal statute must be construed strictly, "that rule of construction 'does not abrogate the well recognized canon that a statute or ordinance should be read and applied so as to accord with the purpose intended and attain the objects desired if that may be accomplished without doing harm to its language.' " *Crone* v. *Richmond Newspapers, Inc.*, 238 Va. 248, 254, 384 S.E.2d 77, 80 (1989) (quoting *Gough* v. *Shaner*, 197 Va. 572, 575, 90 S.E.2d 171, 174 (1955)).

*Bell* makes plain one of the legislative purposes in enacting Code § 18.2-239. In describing the effect of the promotional scheme, we said

> [a]s the number in the chain of participants expands and the market for new recruits declines, the law of diminishing returns begins to operate against the interests of those who become participants late in the process. Once the market is exhausted, no participant . . . has an "opportunity to receive compensation . . . in return for inducing other persons to become participants in the program."

Code § 18.2-239(a); *Bell*, 236 Va. at 303, 374 S.E.2d at 16.

■ The *Bell* rationale applies here. Durastill's program is designed to create an expanding chain of participants, each of

whom pays Durastill $5,000 for the privilege of earning commissions by recruiting other participants. In order to recoup their $5,000 investments and to make additional profits, the distributors and their expanding chain of recruits are encouraged to sell as many distributorships as they can. As the base of the pyramid expands, there are fewer persons left to be potential distributors. Thus, the law of diminishing returns begins to operate against later recruits, eventually depriving them of their purchased "opportunity to receive compensation . . . in return for inducing other persons to become participants in the program." Code § 18.2-239(a). Clearly, this is an evil that Code § 18.2-239(a) sought to suppress.

▇ Nor is harm done to the language of the statutory definition by concluding that the intermediate parties need not receive compensation from the efforts of their recruits to establish a pyramid promotional scheme. Durastill's scheme is within the language of the statutory definition of a pyramid promotional scheme because it "utiliz[es] a pyramid or chain process" that places Durastill at the apex of a pyramid resting upon a base of distributors who have been enticed into paying Durastill $5,000 for the ever-decreasing opportunity to recoup their investment by recruiting other distributors.

▇ For these reasons, we conclude that Durastill's promotional sales program is a "pyramid promotional scheme" that violates the provisions of Code § 18.2-239. Therefore, Durastill's contract with Love is "against public policy," and made "void and unenforceable" by the provisions of Code § 18.2-239. Accordingly, we will reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*