OPINION OF THE COURT
Thomas A. Dickerson, J.
These two small claims cases were consolidated for trial and came before this court on May 5, 1994.
After trial the court makes the following findings of fact.
The plaintiffs, Broome and André, wanted to take a basic beginners’ computer programming course for which there were no prerequisites such as advanced math or science courses. In search of a basic beginners’ computer programming course, the plaintiffs obtained the Pace University 1993-1994 Graduate Catalog and Application (Pace Catalog) for the School of Computer Science and Information Systems (Pace Computer School). At page 7 of the Pace Catalog the defendant encouraged students without a computer programming background to take courses leading to a graduate certificate in programming.
The Pace Catalog described many courses that were available at the Pace Computer School. At page 21 of the Pace Catalog a basic beginners’ computer programming course entitled CS 502 — Fundamental Pascal Programming (Pascal Course) was described as a "Concentrated orientation course”. In addition, at page 128 of the Pace Fall 1993 Class Schedule (Pace Class Schedule) it was noted that there were no prerequisites for the Pascal Course.
After reading the foregoing the plaintiffs met with their assigned advisor, Dr. Narayan Murthy, Chairman of the Department of Computer Science at the Pace Computer School. *616 The plaintiffs made it clear that they did not have a strong or even moderate math background and were concerned that the Pascal Course might require advanced math skills. However, Dr. Murthy assured them that the Pascal Course did not require an advanced math background and that with their rudimentary high school math background they could complete the Pascal Course without difficulty.
Based upon the Pascal Course descriptions and upon the advice and reassurances of Dr. Murthy, the plaintiffs decided to apply for admission to the Pace Computer School for the fall term 1993 and take the Pascal Course. The cost of the 4-credit, 16-week Pascal Course was $1,655 which included tuition of $1,600, general institutional fee of $45 and installment plan fee of $10. The plaintiffs were accepted at the Pace Computer School and admitted to the Pascal Course.
The plaintiff chose to pay for the Pascal Course by using the Pace Installment Plan. The plaintiffs paid defendant $855 each for the Pascal Course.
Pace Professor Carroll Zahn was assigned to teach the Pascal Course and the first class took place on September 22, 1993. The second class took place on September 29, 1993 at which time Professor Zahn identified the course textbook as Coopers Revised Condensed Pascal (with more Math and Science) (Pascal Textbook) and it cost $30. The plaintiffs attended this class and were assigned problem 1-6. The preface to the Pascal Textbook made it abundantly clear that it was geared for students who were computer science (CS) majors and/or scientists and engineers. The plaintiffs were neither. In fact, they were self-professed beginners. In addition, the Pascal Textbook contained numerous homework problems "intentionally drawn from math and science”. These problems were incomprehensible to the plaintiffs and other class members who, unlike the textbook’s target audience of computer science majors, scientists and engineers, were poorly equipped to solve them with no more than a rudimentary high school math background.
The third class of the Pascal Course took place on October 6, 1993. The plaintiffs attended this class and informed Professor Zahn that the math required to solve problem 1-6 was way over their heads and they could not complete their homework. Professor Zahn noted that this problem was, indeed, difficult and instructed them to keep working on it as their next homework assignment. After this third class the plaintiffs *617 contacted the office of their advisor Dr. Murthy, and noting the problems they were having with the Pascal Course and Professor Zahn, they requested a meeting. Notwithstanding the urgency of plaintiffs’ request Dr. Murthy did not agree to meet until October 25, 1993, 19 days later.
The fourth class took place on October 13, 1993. The plaintiffs and other class members still could not solve problem 1-6 and informed Professor Zahn of their frustration. Professor Zahn spent the entire class period trying to solve problem 1-6 and failed to do so. His homework assignment to the plaintiffs and the class was to keep working on problem 1-6.
The fifth class took place on October 20, 1993. The plaintiffs and class members and Professor Zahn were still unable to solve problem 1-6. At trial Professor Zahn admitted that a student would need more than high school math to complete problem 1-6. In complete frustration the plaintiffs left the fifth class before its completion and never returned to the Pascal Course. At no time during the five weeks that plaintiffs were attending classes did Professor Zahn hand out a course syllabus.
The next day on October 21, 1993 the plaintiffs filed a formal complaint with Dr. Susan M. Merritt, Dean of the Pace Computer School, wherein they stated that "We are withdrawing from the [Pascal Course] and [Pace Computer School] and demand a full refund for our tuition and books”.
On October 25, 1993 the plaintiffs had a meeting with their advisor Dr. Murthy. Dr. Murthy agreed that Professor Zahn had chosen an inappropriate textbook and was not teaching the Pascal Course properly. Dr. Murthy stated, however, that Professor Zahn was a tenured professor and, hence, he would do nothing to interfere with how Professor Zahn was teaching the Pascal Course.
On October 27, 1993 the plaintiffs served on Dr. Merritt and Dr. Murthy a petition signed by themselves and 23 other members of the Pascal Course raising the same complaints set forth in the plaintiffs’ formal complaint filed with Dr. Merritt earlier.
On October 27, 1993 the plaintiffs signed a Pace change of schedule form formally withdrawing from the Pascal Course.
On November 1, 1993 the plaintiffs met with Dr. Merritt and Dr. Murthy. At that time Dr. Merritt found the plaintiffs’ complaints to be without merit and stated that Professor Zahn was a "good professor”. Nonetheless Dr. Merritt did offer a *618 tuition credit and admission to a future session of the Pascal Course taught by someone other than Professor Zahn. The plaintiffs rejected this offer and demanded a full refund of $885 which included the cost of the Pascal Textbook. At this point Dr. Merritt accused the plaintiffs of being "consumers and not students”.
On November 2, 1993 Dr. Merritt sent plaintiffs a letter denying their request for a full refund and offering a tuition credit for a "subsequent semester in which another instructor will be teaching CS 502”.
Pace asserts that it owes plaintiffs no money because of its Tuition Cancellation Policy (Pace Cancellation Policy) which requires students who wish to withdraw from a course to file written notice at the Registrar’s Office. If the notice is received prior to the first scheduled class meeting then a complete refund will be available, if after the fifth week of classes, 0% refund.
The plaintiffs withdrew after the fifth scheduled class of the Pascal Course. The plaintiffs admitted that they were aware of the Pace Cancellation Policy but believed it to be unfair under the circumstances. They did not receive the Pascal Textbook until after the second class. During the third and fourth classes they were encouraged by Professor Zahn to keep trying to solve the unsolvable problem 1-6. It was only after the equally unproductive fifth class that they concluded they should withdraw.
DISCUSSION
The plaintiffs brought their claims to this Small Claims Court for adjudication. In Small Claims Court plaintiffs may sue for money damages up to $2,000 (UCCA 1801). (For a history of New York Small Claims Court see, Celona v Celona, NYLJ, Mar. 25, 1994, at 36, col 2 [Yonkers City Ct]; Levins v Bucholtz, 208 Misc 597 [App Term 1955]; Weiner v Tel Aviv Car & Limousine Serv., 141 Misc 2d 339 [1988].)

Cognizable Causes Of Action

In the instant action the court finds that plaintiffs have asserted the following cognizable causes of action against the defendant: (1) breach of contract; (2) rescission based upon (a) want of consideration, (b) failure of consideration, (c) unconscionability, and (d) misrepresentations; (3) breach of fiduciary duty; (4) educational malpractice; and (5) violation of General *619 Business Law § 349 (unfair and deceptive business practices). The defendant has asserted the defense of its Cancellation Policy and asserted a breach of contract against the plaintiffs.

Students Are Consumers Too

Dr. Merritt accused the plaintiffs of being "consumers and not students”. In fact, the plaintiffs are both. Students are consumers of educational services. There is nothing holy or sacred about educational institutions. Colleges and universities are in the business of marketing and delivering educational services and degrees to the general public. In New York State caveat venditor has replaced caveat emptor as the guiding principle of consumer transactions including those involving educational services. (See, e.g., James v SCS Bus. & Tech. Inst., NYLJ, Jan. 15, 1993, at 28, col 4 [Civ Ct, Kings County 1992] [unconscionable education contracts]; see generally, Note, New York Creates a Private Right of Action to Combat Consumer Fraud: Caveat Venditor, 48 Brook L Rev 509 [1982].)
Educational institutions are governed by the same laws, both statutory and common law, that govern other purveyors of goods and services in New York State.
Students as consumers of educational services have been, particularly, susceptible to misrepresentations and fraudulent inducements to purchase educational services which may have little, if any, value. (See generally, Annotation, Liability of Private Vocational or Trade School for Fraud or Misrepresentations Inducing Student to Enroll or Pay Fees, 85 ALR4th 1079.) As a result, the courts in New York State have been, especially, vigilant in scrutinizing the reality of educational contracts (see, e.g., Joyner v Albert Merrill School, 97 Misc 2d 568, 574 [1978] [courts must closely scrutinize "commercial consumer transactions to guard against predatory practices calculated to take advantage of the unwary consumer”]; Albert Merrill School v Godoy, 78 Misc 2d 647, 648 [1974] [action against pro se consumer requires "further probing by the court”]; Educational Beneficial v Reynolds, 67 Misc 2d 739, 745 [Civ Ct, NY County 1971] [concern that "consumers who are victims of gross inequality of bargaining power shall be protected against overreaching”]; James v SCS Bus. & Tech. Inst., NYLJ, Jan. 15, 1993, at 28, col 4 [Civ Ct, Kings County 1992], supra [General Business Law § 349 (deceptive business practices) applies to educational institutions and the failure to deliver promised educational services]).

*620
Breach Of Contract

The law in New York State recognizes that there is a contractual relationship between student and college, university or trade school (see, Paladino v Adelphi Univ., 89 AD2d 85 [1982] [breach of contract when school provides no educational services or fails to provide specified services]; James v SCS Bus. & Tech. Inst., NYLJ, Jan. 15, 1993, at 28, col 4, supra [failure to provide promised educational services or training]; Joyner v Albert Merrill School, 97 Misc 2d 568, supra [failure to provide promised employment]; Village Community School v Adler, 124 Misc 2d 817 [1984] [failure to provide tutorial and guidance services]).
In this case the plaintiffs entered into an educational contract whereby the plaintiffs would pay defendant $1,655, in two installments, in return for which defendant would deliver a 4-credit, 16-week course of instruction entitled the Pascal Course. The Pascal Course was described in the Pace Catalog and the Pace Class Schedule and by its employee and plaintiffs’ "advisor”, Dr. Murthy, as a basic orientation computer programming course for persons with a "baccalaureate degree in a subject unrelated to computers” which could be completed without difficulty by persons, like the plaintiffs, who had a rudimentary high school math background. This is what the plaintiffs agreed to purchase and this is what the defendant agreed to deliver.
Instead, the defendant’s employee, Professor Zahn, selected a textbook plainly unsuited for the plaintiffs and the rest of the class. The Pascal Textbook was written for computer science majors, scientists and engineers and its examples and exercises were "intentionally drawn from math and science”. In addition, Professor Zahn taught from the Pascal Textbook and spent, at least, three class sessions trying to solve the unsolvable problem 1-6.
The defendant breached its educational contract with the plaintiffs in such a manner as to strike at the very heart of the transaction. The defendant is liable for all appropriate damages flowing from its breach of contract including, but not limited to, the tuition fees and cost of the Pascal Textbook.

Demand For Rescission

The failure of the defendant to deliver a basic computer programming course to the plaintiffs and the class was so complete that rescission of the full contract is justified. Whether viewed as a want of consideration (consideration is *621 lacking) or failure of consideration (supervening cause causes performance failure), it is clear that plaintiffs received nothing of value from the defendant (22 NY Jur 2d, Contracts, §§ 328, 439, 464).
On this basis alone rescission of the contract between plaintiffs and defendant is justified. However, rescission may also be granted upon a showing of unconscionability (see, James v SCS Bus. & Tech. Inst., NYLJ, Jan. 15, 1993, at 28, col 4, supra; Albert Merrill School v Godoy, 78 Misc 2d 647, supra; Educational Beneficial v Reynolds, 67 Misc 2d 739, supra) and/or misrepresentations which are deceptive or fraudulent in nature (see, James v SCS Bus. & Tech. Inst., supra; Albert Merrill School v Godoy, supra; Joyner v Albert Merrill School, 97 Misc 2d 568, supra; Paladino v Adelphi Univ., 89 AD2d 85, supra).
In this case the failure of defendant to deliver a basic computer programming course even remotely similar to that which had been promised and contracted for amounts to unconscionability and gross misrepresentation (Hertz Corp. v Attorney-General of State of N. Y., 136 Misc 2d 420 [1987]).
The descriptions of the Pascal Course in the Pace Catalog and the Pace Class Schedule and given by Dr. Murthy were false, deceptive and misleading. The plaintiffs relied on these misrepresentations, paid defendant $885 each and wasted a considerable amount of time and energy trying to deal with a computer course for which they were unsuited. Had the plaintiffs been informed of the truth about the Pascal Course they, certainly, would never have taken it. Rescission of the contract between the plaintiffs and the defendant is justified because the contract was unconscionable and because plaintiffs were induced to enter into the contract in reliance upon defendant’s gross misrepresentations.

Breach Of Fiduciary Duty

In this case the defendant assumed the obligations of a fiduciary towards the plaintiffs when it assigned Dr. Narayan Murthy, Chairman of the Department of Computer Science, to be plaintiffs’ "advisor”. It was Dr. Murthy that "advised” and misinformed the plaintiffs about the true nature of the Pascal Course by reassuring them that no advanced math background was needed. The plaintiffs trusted Dr. Murthy as their "advisor” and relied upon his judgment and inducements and purchased the Pascal Course.
After the Pascal Course started Dr. Murthy admitted that *622 Professor Zahn had chosen an inappropriate textbook and was not teaching the Pascal Course properly. Dr. Murthy was Department Chairman and the supervisor of Professor Zahn. Dr. Murthy had both the power and the obligation to address plaintiffs’ complaints by ordering Professor Zahn to change textbooks and teach the basic computer programming course which the plaintiffs and the class had purchased. Instead, Dr. Murthy did nothing. His fiduciary duties required much, much more (Di Maio v State of New York, 135 Misc 2d 1021 [1987]).
Because the defendant assumed a fiduciary duty towards the plaintiffs the court need not address the broader issue of the nature of the general relationship between student and college (see, e.g., Village Community School v Adler, 124 Misc 2d 817, 818, supra, citing Donohue v Copiague Union Free School Dist. 47 NY2d 440 [1979]; James v SCS Bus. & Tech. Inst., NYLJ, Jan. 15, 1993, at 28, col 4, supra [colleges which participate in HEA programs are fiduciaries]). The defendant assumed a fiduciary duty towards the plaintiffs and breached that duty and is liable for the damages flowing therefrom.

Educational Malpractice

The plaintiffs claim that Professor Zahn was "not qualified and competent to teach a beginning programming class”. Based upon the evidence, this court agrees. The Pascal Course was a basic beginners’ programming course which did not require a computer background or more than rudimentary high school math. Knowing this Professor Zahn selected the Pascal Textbook which was targeted towards computer science majors, scientists and engineers. Professor Zahn taught the Pascal Course using the Pascal Textbook and assigned problems therein "intentionally drawn from math and science”.
Both the formal complaint filed by the plaintiffs and the petition signed by plaintiffs and 23 other members of the Pascal Course confirm the inability, if not unwillingness, of Professor Zahn to teach the course which the plaintiffs and the class purchased. Whether based upon contract or tort, the defendant and its employee Professor Zahn owed a duty to plaintiffs to teach the Pascal Course as it was promised and in a competent manner. The negligence and/or unwillingness of Professor Zahn to select an appropriate textbook and to teach a basic beginners’ computer programming course was the proximate cause for the inability of the plaintiffs to receive anything of value from the Pascal Course. Under these circumstances this court need not "review the soundness of the *623 method of teaching * * * adopted” by Professor Zahn (Paladino v Adelphi Univ., 89 AD2d 85, 90, supra) since the selection and use of the computer textbook in a beginners’ course which was written for computer science majors, scientists and engineers is a per se example of negligence, incompetence and malpractice. Further, this is not a case where plaintiffs are claiming negligence on the part of defendant in failing to deliver a "quality” education (see, Paladino v Adelphi Univ., 89 AD2d 85, supra [no cause of action for failing to provide a quality education]; Village Community School v Adler, 124 Misc 2d 817, supra; see also, Annotation, Tort Liability of Public Schools and Institutions of Higher Learning for Educational Malpractice, 1 ALR4th 1139).
The defendant and its employee, Professor Zahn, are liable in negligence for failing to competently and properly teach the promised Pascal Course and are responsible for all appropriate damages flowing therefrom.

Violation Of General Business Law § 349

General Business Law § 349 prohibits deceptive business practices and applies to educational contracts (see, James v SCS Bus. & Tech. Inst., NYLJ, Jan. 15, 1993, at 28, col 4, supra; Matter of State of New York v Interstate Tractor Trailer Training, 66 Misc 2d 678, 682 [Sup Ct, NY County 1971] ["The representations * * * have no basis in fact and would clearly tend to deceive or mislead those persons seeking to better themselves in a new field of employment”]).
General Business Law § 349 is a broad, remedial statute (see, Note, New York Creates a Private Right of Action to Combat Consumer Fraud: Caveat Venditor, op. cit.) directed towards giving consumers a powerful remedy to right commercial wrongs. The elements of a violation of General Business Law § 349 are (1) proof that the practice was deceptive or misleading in a material respect, and (2) proof that plaintiffs were injured (see, Givens, Practice Commentaries, McKinney’s Cons Laws of NY, Book 19, General Business Law art 22-A, at 565; McDonald v North Shore Yacht Sales, 134 Misc 2d 910, [Sup Ct, Nassau County 1987]; Geismar v Abraham & Strauss, 109 Misc 2d 495 [Suffolk Dist Ct 1981]). There is no requirement under General Business Law § 349 that plaintiffs prove that defendant’s practices or acts were intentional, fraudulent or even reckless. Nor is there any requirement under General Business Law § 349 that plaintiffs prove that they relied upon defendant’s misrepresentations and deceptive practices.
*624 In this case the defendant’s descriptions of the Pascal Course, both printed in the Pace Catalog and the Pace Class Schedule and delivered orally by Dr. Murthy were false, misleading and deceptive. Plaintiffs relied upon these printed and oral representations, paid defendant $885 each and wasted a considerable amount of time trying to handle the Pascal Course as delivered. The defendant has violated General Business Law § 349 and is liable to plaintiffs for all damages permitted thereunder.

Defendant’s Counterclaims

Defendant seeks to enforce its Tuition Cancellation Policy which prohibits any tuition refund if students withdraw after the start of the fifth week of a course of instruction. The plaintiffs formally withdrew after the fifth session of the Pascal Course began. In addition, the defendant seeks enforcement of its contract with the plaintiffs and demands payment of the remaining balance of $800 each.
Under appropriate circumstances school tuition cancellation policies and school tuition contracts are enforceable against students who withdraw from a course of instruction (see, e.g., Drucker v New York Univ., 59 Misc 2d 789, affd 33 AD2d 1106 [1969]; see also, Annotation, Absence From or Inability to Attend School or College as Affecting Liability for or Right to Recover Payments for Tuition or Board, 20 ALR4th 303). The burden of proof is upon the school to prove actual damages due to the withdrawal (see, Cazenovia Coll. v Patterson, 45 AD2d 501 [1974]; Mount Ida School for Girls v Rood, 253 Mich 482, 235 NW 227 [1931]).
In this case, however, to enforce defendant’s Tuition Cancellation Policy and then to enforce the tuition contract and require plaintiffs to pay an additional $800 each would be unconscionable. The cases which have enforced tuition contracts, typically, do so when students withdraw without cause (see, Drucker v New York Univ., 59 Misc 2d 789, 790, supra ["it clearly appears that plaintiff breached the contract without cause”]; Bergman v Bouligny, 82 A2d 760 [Colo Ct App 1951]; Annotation, op. cit, 20 ALR4th 303, 310 [pupil withdraws without fault of school]; Brenner v Little Red School House, 302 NC 207, 274 SE2d 206 [1981]; Annotation, op. cit., 20 ALR4th 303, 311 [where failure to attend is not caused by some failure on the part of the school]).
The plaintiffs did not cancel sooner than the sixth week of *625 instruction because they did not receive the Pascal Textbook until after the second session of the course. Then it took three more sessions to come to the obvious conclusion that they did not have the math skills to solve even one of the many problems in the Pascal Textbook. In addition, after the third class on October 6, 1993 the plaintiffs called the office of Dr. Murthy, requested a meeting, noted the problems they were having with the Pascal Course and Professor Zahn and expressed their dissatisfaction. Dr. Murthy did not agree to meet with the plaintiffs until October 25, 1993, 19 days later, which was after the last possible moment when plaintiffs could have withdrawn and obtained, at least, a 20% tuition refund. Why didn’t Dr. Murthy respond sooner to the plaintiffs’ complaints and request for a meeting? Under these circumstances the defendant’s Tuition Cancellation Policy is unfair, unconscionable and unenforceable.
As for the defendant’s request to enforce its tuition contract with the plaintiffs this contract is unenforceable. The plaintiffs, clearly, withdrew from the Pascal Course for cause and the cause was that defendant completely failed to deliver the basic computer programming course promised and contracted for. All of the reasons (want and/or failure of consideration, unconscionability and misrepresentations) which justify rescission of the tuition contract apply equally here (22 NY Jur 2d, Contracts, §§ 328, 439, 464).
DAMAGES
This court finds defendant liable to the plaintiffs on the following causes of action: (1) breach of contract; (2) breach of fiduciary duty; (3) negligence or educational malpractice; and (4) violation of General Business Law § 349. In addition, the educational contract is rescinded based upon want and/or failure of consideration, unconscionability and misrepresentations.
The court awards the following damages to the plaintiffs.
First, damages will include the $855 tuition and fees payment and the $30 paid for the Pascal Textbook. Hence, plaintiffs’ actual damages are $885.
Second, pursuant to General Business Law § 349 (h) the court finds that defendant willfully violated General Business Law § 349. Although the court would like to treble plaintiffs’ actual damages of $885, the maximum increase permissible (see, Hart v Moore, 155 Misc 2d 203) would be $115 raising *626 recoverable damages under General Business Law § 349 to $1,000 for each plaintiff.
Third, the court finds defendant’s misconduct, particularly those facts underlying the breach of fiduciary duty cause of action, to be morally culpable. (See, Walker v Sheldon, 10 NY2d 401 [1961]; Joyner v Albert Merrill School, 97 Misc 2d 568, supra [waste of valuable time; punitive damages of $2,-500]; Nitti v Credit Bur., 84 Misc 2d 277 [1975] [willful violation of Federal Fair Credit Reporting Act; punitive damages of $10,000].) Punitive damages are appropriate in this case and are needed to deter other educational institutions from similar misconduct. Further, such damages will encourage defendant to cease misrepresenting its educational services and honor its assumed fiduciary obligations to advise students properly and to respond to their legitimate complaints. The court awards each plaintiff punitive damages of $1,000.