OPINION OF THE COURT
Thomas A. Dickerson, J.
The plaintiff, Elizabeth Brown (Brown), wanted to be a travel agent.
Travel agents sell air transportation, cruises, hotel accommodations, tours and much, much more. Travel agents are professionals and fiduciaries and are expected to be knowledgeable of the travel services they sell (see, e.g., Pellegrini v Landmark Travel Group, 165 Misc 2d 589, 592 [1995] ["Travel agents are best viewed as information specialists upon whom consumers rely for the provision of accurate information and confirmation of travel arrangements”]).
To become a professional travel agent, however, requires years of training and participation in advanced educational *504 programs such as those provided by the Institute of Certified Travel Agents (ICTA) and the American Society of Travel Agents (ASTA), accreditation by supplier organizations such as the Airlines Reporting Corporation (ARC) and the Cruise Lines International Association (CLIA), compliance with State and local licensing and registration requirements and obtaining bonding and comprehensive insurance.[1]
Brown asked the defendant, James E. Hambric (Hambric), for his advice on how to become a professional travel agent. Hambric was an Independent Travel Consultant (ITC) working for NU-Concepts In Travel (NU-Concepts) with headquarters in Santa Fe Springs, California. Hambric was an agent for NU-Concepts and authorized to sponsor and recruit new ITCs. Hambric convinced Brown that the NU-Concepts "fast start plan” would provide her with the kind of training and education necessary to become a professional travel agent.
Hambric gave Brown the NU-Concepts In Travel "Passport To Success” Distributor Manual (the Manual) which described the NU-Concepts opportunity. The Manual promised that NU-Concepts would provide support, education and training.
In addition to selling travel services NU-Concepts Independent Travel Agents are strongly encouraged to sell distributorships ("Or you can make a good deal more money by developing your contacts into Independent Distributors of the NU-Concepts in Travel Independent Distributor Network * * * you teach your contacts — a firm foundation of 5-7 people * * * to follow the simple steps you have followed * * * Then, with your help, they each teach 5-7 contacts who teach their contacts [and so on and so on]”).
Relying upon the Manual and Hambric, Brown purchased the NU-Concepts travel agent package for $537.75.
NU-Concepts failed and refused to provide Brown with the support, education and training promised and paid for. Neither NU-Concepts nor Hambric provided the promised supervisory and training support. In addition, Hambric, as Brown’s sponsor, refused to attend scheduled training sessions, refused to communicate with NU-Concepts personnel on Brown’s behalf and did not stay current with NU-Concepts information.
As a consequence Brown was forced to purchase her own educational programs at a cost of $490.08.
*505 DISCUSSION
Based on the foregoing the court finds that the plaintiff has asserted the following cognizable causes of action against the defendant: (1) breach of contract; (2) violation of New York State General Business Law § 359-fff (pyramid schemes prohibited); (3) rescission based upon (a) want of consideration, (b) failure of consideration, (c) unconscionability and (d) misrepresentations; and (4) violation of New York State General Business Law § 349 (deceptive and unfair business practices).

Pyramid Schemes

There is nothing "new” about NU-Concepts. It is an old scheme,[2] simply, repackaged for a new audience of gullible consumers mesmerized by the glamour of the travel industry and hungry for free or reduced cost travel services. Stripped of its clever disguise as a recruiter and educator of outside travel agents, NU-Concepts is nothing more than a pyramid scheme (see, e.g., Nguyen v Fundamerica, Inc., 1990 WL 165257 [ND Cal 1990], Fed Sec L Rep 95,498 ["(a pyramid scheme) is one in which a participant pays money to the company or its representatives and in return receives (1) the right to sell products, and (2) the right to earn rewards for recruiting other participants into the scheme”]; Securities & Exch. Commn. v Steed Indus., 1974 WL 472 [ND I11 1974], Fed Sec L Rep fl 94,917 ["a pyramid promotion or endless chain scheme * * * is the recruitment of investors * * * who in form will be distributors of * * * products but who in fact will devote their efforts almost entirely (to locating) * * * other investors * * * to recruit”]; Securities & Exch. Commn. v Turner, 474 F2d 476, 478 [9th Cir 1973] ["Dare To Be Great * * * scheme is a gigantic and successful fraud”]; In re Omnitrition Intl., 1993 WL 271466 [ND Cal 1993], Fed Sec L Rep 97,655 ["Omnitrition sells distributorships in an endless chain of recruitment. Through slick advertising and personal sales solicitations, Omnitrition misrepresents the likelihood of achieving financial security”]; Kugler v Koscot Interplanetary, 120 NJ Super 216, 293 A2d 682 [1972], supra [cosmetics fraud]; State of New York *506 v Phase II Sys., 109 Misc 2d 598, 599-600 [1981] ["members * * * can make money just by bringing into the organization new people willing to become a salesperson”]; Note, New York Creates A Private Right Of Action To Combat Consumer Fraud: Caveat Venditor, 48 Brook L Rev 509, 558-559, n 209 ["Pyramid solicitations are sham money making schemes whereby individuals are induced to participate in a plan for making money by means of recruiting others, with the right to encourage or solicit new memberships in the pyramid passed on as an inducement for others to join”]).

Breach Of Contract

Brown wanted to be a professional travel agent. NU-Concepts and Hambric knew this and convinced Brown to become an ITC as a means of fulfilling her goal. Amongst the many promises made by NU-Concepts which were relied upon by Brown was the delivery of "Adequate training [which included] education regarding NU-Concepts in Travel Rules and Regulations, Compensation Plan, product information, sound business strategies and ethical behavior”. In addition, Hambric, Brown’s ITC sponsor, was to perform as a "bonafide sales supervisor and/or sales trainer in the sale or delivery of products to the ultimate consumer”. NU-Concepts and Hambric failed and refused to provide the support, training and education contracted for.
The law in New York State recognizes a contractual relationship between student and college, university or trade school (see, e.g., Andre v Pace Univ., 161 Misc 2d 613, 620 [1994] [breach of contract to provide computer programming course]; Paladino v Adelphi Univ., 89 AD2d 85 [1982] [breach of contract when school provides no educational services or fails to provide specified services]; James v SCS Bus. & Tech. Inst., NYLJ, Jan. 15, 1993, at 28, col 4 [Civ Ct 1992] [failure to provide promised educational services or training]; Joyner v Albert Merrill School, 97 Misc 2d 568 [1978] [failure to provide promised employment]; Village Community School v Adler, 124 Misc 2d 817 [1984] [failure to provide tutorial and guidance services]).
The courts in New York State are required to be vigilant and carefully examine the reality of educational contracts (see, e.g., Andre v Pace Univ., supra, 161 Misc 2d, at 619; Joyner v Albert Merrill School, supra, 97 Misc 2d, at 574 ["(courts must carefully examine) commercial consumer transactions to guard against predatory practices calculated to take advantage of the *507 unwary consumer”]; Albert Merrill School v Godoy, 78 Misc 2d 647, 648 [action against pro se consumer requires "further probing by the court”]; Educational Beneficial v Reynolds, 67 Misc 2d 739, 745 [Civ Ct 1971] [concern that "consumers who are victims of gross inequality of bargaining power shall be protected against overreaching”]).
NU-Concepts and Hambric breached their contract with plaintiff in such a manner as to strike at the very heart of the bargain contracted. The defendant is liable for all appropriate damages flowing from its breach of contract including, but not limited to, the cost of obtaining alternative educational services.

Violation Of General Business Law § 359-fff

New York State General Business Law § 359-fff prohibits "chain distributor schemes” which are defined as "a sales device whereby a person, upon condition that he make an investment, is granted a * * * right to * * * recruit for profit * * * one or more additional persons who are also granted such * * * right upon condition of making an investment and may further perpetuate the chain of persons who are granted such * * * right” (General Business Law § 359- fff [2]).
Notwithstanding passing reference to the availability of commissions on the sale of travel services through Jetaway Travel (the Manual, at 4), the primary compensation for ITCs is from selling distributorships "you can make a good deal more money * * * you teach your contacts * * * 5-7 people * * * they each teach 5-7 contacts who teach their contacts” (the Manual, at 19) which must be divided and passed up the line to a chain of sponsoring ITCs (the Manual, at 20-23). The promised training and education is never delivered nor is it intended to be since NU-Concepts is a pyramid scheme and not a real recruiter and trainer of outside travel agents.
As such NU-Concepts violated General Business Law § 359-fff (see, e.g., State of New York v Phase II Sys., 109 Misc 2d 598, 600, supra ["There is sufficient indication herein that defendants are participating in a scheme where the emphasis is not on the sale of a product, but on recruiting new organizational rows to boost existing members”]; compare, United States v Bestline Prods. Corp., 412 F Supp 754 [ND Cal 1976] [pyramid scheme; commissions paid to upline distributors who perform no supervisory functions violates order]; State ex rel. Edmisten v Challenge, Inc., 54 NC App 513, 284 SE2d 333 [1981] [North Carolina pyramid scheme statute]; Love v Durastill of Rich *508 mond, 242 Va 186, 408 SE2d 892 [1991] [Virginia pyramid scheme statute]; State v Ferro, 1988 WL 39996 [Del Super 1988] [Delaware pyramid scheme statute]) and is liable to Brown for all damages permitted thereunder.

Demand For Rescission

The failure of NU-Concepts and Hambric to deliver the promised training and educational services was so complete that rescission of the distributorship agreement is justified. Whether viewed as a want of consideration or a failure of consideration, it is clear that Brown received little of value from NU-Concepts and Hambric (22 NY Jur 2d, Contracts, §§ 328, 439, 464).
Rescission may also be granted upon a showing of unconscionability (see, e.g., James v SCS Bus. & Tech. Inst., supra; Albert Merrill School v Godoy, 78 Misc 2d 647, supra ; Educational Beneficial v Reynolds, 67 Misc 2d 739, supra; State of New York v ITM, 52 Misc 2d 39 [1966] [endless chain transaction based on unconscionable contracts]) and/or misrepresentations which are deceptive or fraudulent in nature (see, e.g., Andre v Pace Univ., supra, 161 Misc 2d, at 620-621; James v SCS Bus. & Tech. Inst., supra; Albert Merrill School v Godoy, supra; Joyner v Albert Merrill School, supra, 97 Misc 2d, at 568; Paladino v Adelphi Univ., 89 AD2d 85, supra).
In this case the failure of NU-Concepts and Hambric to deliver the promised support, training and education amounts to unconscionability and gross misrepresentations (see, e.g., Hertz Corp. v Attorney-General of State of N. Y., 136 Misc 2d 420 [1987] ["The concept has been employed primarily in the area of consumer protection, in an attempt to deal with the 'never ending stream of consumer gypsters and fraudulent operators’ ”]).

Violation Of General Business Law § 349

New York State General Business Law § 349 prohibits deceptive business practices and applies to pyramid schemes (see, e.g., Teller v Bill Hayes, Ltd., 213 AD2d 141 [2d Dept 1995] [General Business Law § 349 applies to pyramid schemes]; Goldberg v Manhattan Ford Lincoln-Mercury, 129 Misc 2d 123 [1985]; State of New York v Phase II Sys., supra; State of New York v ITM, supra; Kugler v Koscot Interplanetary, supra [New Jersey Consumer Fraud Act applies to cosmetics pyramid scheme]) and to educational contracts (see, e.g., Andre v Pace Univ., supra, 161 Misc 2d, at 623-624; James v SCS Bus. & *509 Tech. Inst., supra; Matter of State of New York v Interstate Tractor Trailer Training, 66 Misc 2d 678 [1971] ["The representations * * * have no basis in fact and would clearly tend to deceive or mislead those persons seeking to better themselves in a new field of employment”]).
General Business Law § 349 is a broad, remedial statute (see, e.g., Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, 85 NY2d 20 [1995]; see also, Note, New York Creates A Private Right Of Action To Combat Consumer Fraud: Caveat Venditor, op. cit.) directed towards giving consumers a powerful remedy. The elements of a violation of General Business Law § 349 are (1) proof that the practice was deceptive or misleading in a material respect and (2) proof that plaintiff was injured (see, Givens, Practice Commentaries, McKinney’s Cons Laws of NY, General Business Law § 349, at 565; McDonald v North Shore Yacht Sales, 134 Misc 2d 910 [1987]; Geismar v Abraham & Strauss, 109 Misc 2d 495 [1981]). There is no requirement under General Business Law § 349 that plaintiff prove that defendant’s practices or acts were intentional, fraudulent or even reckless. Nor does plaintiff have to prove reliance upon defendant’s deceptive practices.
Clearly, the many promises made by NU-Concepts and Hambric (e.g., that NU-Concepts creates tremendous opportunities for persons interested in becoming travel agents, that NU-Concepts will provide the training and education necessary to become a professional travel agent, that NU-Concepts will provide supervisors and trainers) were false, misleading and deceptive. Brown relied upon these misrepresentations, paid NU-Concepts and Hambric $537.75 and was forced to pay an additional $490.08 for educational services which were not delivered. Hambric has violated General Business Law § 349 and is liable to Brown for all damages permitted thereunder.
DAMAGES
The plaintiff is awarded the following damages: first, damages will include $490.08 representing the costs of obtaining the promised training and educational services which Hambric refused to deliver; second, the court finds that Hambric has violated General Business Law §§ 349 and 359-fff. Pursuant to General Business Law § 349 (h) the court finds that Hambric has wilfully violated General Business Law § 349. Although the court would like to treble plaintiff’s actual damages of *510 $490.08, the maximum increase permissible (see, Hart v Moore, 155 Mise 2d 203 [1982]) is $509.92 raising the plaintiffs recoverable damages to $1,000.

. For a discussion of travel agents, Friedheim, Travel Agents, Travel Agent Magazine Books, New York 1992.

. (See, Kugler v Koscot Interplanetary, 120 NJ Super 216, 233, 293 A2d 682 [1971] [cosmetics pyramid scheme].) "Fraud is infinite in variety. The fertility of man’s invention in devising new schemes of fraud is so great, that the courts have always declined to define it * * * All surprise, trick, cunning, dissembling and other unfair way that is used to cheat anyone is considered as fraud.”